**KINGSTON DRY DOCK CO. v. LAKE CHAM-
PLAIN TRANSP. CO.**

Circuit Court of Appeals, Second Circuit.
March 4, 1929.

No. 189.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

William F. Purdy, of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). The cause has been argued as though it made a difference whether the attachment was valid as against the conditional seller under the laws of New York. This could be so only in case the respondent's interest in the boats was itself not leviable in a suit in the admiralty, in which case the attachment must be either wholly void or good even against the interest of the conditional seller. We may agree, since the conditional sales were made in 1920, and the Conditional Sales Law (Personal Property Law [Consol. Laws, c. 41, art. 4]) was enacted only in 1922, and was not to be retroactive, that the validity of the attachment against the interest of the conditional seller depended upon the law of 1909. Under that law we may also agree that the attachment did not reach the interest of the conditional seller. Hence it must stand as an attachment upon the interest of the conditional buyer alone, and the question is whether such an interest is leviable by attachment in the admiralty.

This is not a question of state law and the New York decisions do not help us. The right to proceed by foreign attachment rests upon the power of the Supreme Court (title 28, § 723, of the U. S. Code; 28 USCA § 723) to regulate practice in the admiralty, and upon its second rule in admiralty, supplemented by admiralty rule 19 of the Eastern District of New York (Nanro v. Almeida, 10 Wheat. 473, 6 L. Ed. 369; Smith v. Miln, Abb. Adm. 373, Fed. Cas. No. 13,081). The Supreme Court rule, following very ancient practice, provides that the libelant may attach the respondent's "goods and chattels, or credits and effects in the hands of garnishees." "Effects" covers chattels (The Alpena [D. C.] 7 F. 361), and we are to say whether "goods and chattels" covers "equitable interests" in chattels in the possession of a respondent. While a conditional buyer has no title, possession, so far as common-law notions are to prevail at all, is historically the original source of all title, as appears from the ancient doctrine that the

right of a bailor was itself a chose in action. It would be curious if possession, coupled with a conditional right to title, should now be thought insufficient to support a seizure. However that may be, we are dealing with matters derived, not from the common law, nor even from the custom of London and Exeter, but from a practice borrowed from the civil law. Attachment in the admiralty, from the time of Clerke's Praxis, included what we now call garnishment; that is, a levy upon debts owed a respondent. While we can find nothing on the point, it appears to us absurd to suppose that, although the respondent's interest could thus have been garnisheed, had the boats been in the possession of the conditional seller, it may not be attached by manucaption while they were in its own. Yet this is the necessary consequence of the position taken. We hold that the attachment was valid, and the general appearance was sufficient for jurisdiction.

On the merits, the case seems to us clear. There are numerous cases in which a parent corporation has been held liable because of control over its subsidiary. We have had recent occasion to consider that situation in Costan v. Manila Electric Co. (C. C. A.) 24 F.(2d) 383, and we understand the rule to be this. Control through the ownership of shares does not fuse the corporations, even when the directors are common to each. One corporation may, however, become an actor in a given transaction, or in part of a business, or in a whole business, and, when it has, will be legally responsible. To become so it must take immediate direction of the transaction through its officers, by whom alone it can act at all (Pullman P. C. Co. v. Mo. Pac. Ry. Co., 115 U. S. 587, 6 S. Ct. 194, 29 L. Ed. 499; Peterson v. C., R. I. & P. Ry. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841; U. S. v. D., L. & W. R. R. Co., 238 U. S. 516, 35 S. Ct. 873, 59 L. Ed. 1438; C., M. & St. P. R. R. v. Minn. Civic & Commerce Assn., 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229; Davis v. Alexander, 269 U. S. 114, 46 S. Ct. 34, 70 L. Ed. 186; The Willem Van Driel, 252 F. 35 (C. C. A. 4); Lehigh Valley R. R. Co. v. Dupont, 128 F. 840 (C. C. A. 2); Lehigh Valley R. R. Co. v. Delachesa, 145 F. 617 (C. C. A. 2); Majestic Co. v. Orpheum Circuit, 21 F.(2d) 720 (C. C. A. 8); Berkey v. Third Avenue Ry. Co., 244 N. Y. 84, 155 N. E. 58, 50 A. L. R. 599. At times this is put as though the subsidiary then became an agent of the parent. That may no doubt be true, but only in quite other situations; that is, when both intend that relation to arise, for agency is consensual. This seldom is true, and liability normally must depend upon the parent's direct intervention in the transaction, ignoring the subsidiary's paraphernalia of incorporation, directors and officers. The test is therefore rather in the form than in the substance of the control; in whether it is exercised immediately, or by means of a board of directors and officers, left to their own initiative and responsibility in respect of each transaction as it arises. Some such line must obviously be drawn, if shareholding alone does not fuse the corporations in every case. Much of the metaphor in the books merely impedes discourse, as Judge Cardozo well observes in Berkey v. Third Avenue Ry.; here, as elsewhere, it is ordinarily a symptom of confused thinking.

Perhaps it would be too much to say that a subsidiary can never be liable for a transaction done in the name of the parent, the situation at bar. Any person may use another as a screen, and one may conceive cases where such an arrangement might exist. But such instances, if possible at all, must be extremely rare, and there is not the slightest evidence of the sort here. Although it is quite true that the two companies were very intimately related, the respondent never intended in fact to make the Inland Marine Corporation its agent, nor did it interpose in any way in the conduct of its affairs. Rather their relations were reversed, so that the respondent could not have interposed, whatever might be the liability of the Inland Marine Corporation for transactions formally undertaken by the respondent.

All that has really happened is that the libelant, being dissatisfied with the credit of the company with which it dealt now seeks to involve its creature, on the notion that the whole enterprise was single in all its aspects. So long as the law allows associated groups to maintain an independent unity, its sanction is not so easily evaded, and persons dealing with either do so upon the faith of the undertaking of that one which they may select. Here, too, lies the answer to the claim of unjust enrichment. The libelant has been disappointed, not in failing to get the promise which it supposed, but in its performance, a risk inherent in any contract. True, it also got an obligation in rem, from which it has had small benefit, but the law makes no provision for creditors out of the assets of those who have themselves made no undertaking.

Decree reversed, and libel dismissed.