SWIFT & COMPANY PACKERS ET AL. *v.* COMPANIA COLOMBIANA DEL CARIBE, S. A. ET AL.

No. 230.   Argued December 14–15, 1949.—Decided June 5, 1950.

*Eberhard P. Deutsch* argued the cause for petitioners. With him on the brief was *Harry F. Stiles, Jr.*

*Nicholas J. Healy, 3rd* argued the cause and filed a brief for respondents.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The question before us is the propriety of an order of the District Court for the Canal Zone vacating a foreign attachment of a vessel made in a libel *in personam*. We granted certiorari because important questions relating to the scope of admiralty jurisdiction and its exercise are in issue. 338 U. S. 813.

On March 7, 1948, the libel was filed against Compania Transmaritima Colombiana, S. A., a Colombian corporation, by Swift & Company Packers, a Nevada corporation, certain Cuban corporations and individuals, and a Colombian citizen. They brought the libel as owners of rice shipped from Ecuador to Cuba. It was alleged that the cargo had been delivered in good order to the *M/V Cali,* owned and operated by Transmaritima, and that the vessel had sunk, or partially sunk, off the island of Grand Cayman with resulting nondelivery of the cargo. This was supplemented by allegations of negligence. Process was prayed with the further request that if the respondent could not be found its goods and chattels

be attached, particularly a vessel known as the *Alacran,* or *Caribe.* This vessel was thereupon attached by the marshal.

On March 8, libellants filed a supplemental and amended libel, and on the basis of the following allegations joined the Compania Colombiana Del Caribe, S. A., as respondent. On or shortly prior to March 4, the Compania Del Caribe had been organized under the laws of Colombia and the *Alacran* had been transferred by Transmaritima to Del Caribe in fraud of the rights of libellants. The latter company had been organized by directors, officers and stockholders of Transmaritima, but no funds had been paid into its treasury for the issue of its stock, and the transfer of the *Alacran* was without real consideration. Del Caribe was "merely the creature or alter ego" of Transmaritima and "they should be held to be, as they are, one and the same." Del Caribe, on or about March 4, had had the vessel's name changed from *Alacran* to *Caribe,* and a new register had been issued accordingly. In the alternative, the claim was that Del Caribe was indebted to Transmaritima for at least a substantial part if not all of the purchase price of the *Caribe.*

Attachment of the vessel was again prayed on what appears to have been either of two grounds: since Transmaritima and Del Caribe were really one and the same, it mattered not which was deemed to be the owner of the *Caribe;* since the transfer of the *Caribe* to Del Caribe was a fraudulent transfer to be set aside, the vessel was in reality Transmaritima's property and Del Caribe should be garnished. On the basis of the amended libel another attachment of the *Caribe* was made.[1]

---

[1] The marshal's return failed to state that respondents could not be found within the jurisdiction. Cf. *International Grain Ceiling Co.* v. *Dill,* 13 Fed. Cas. 70, No. 7,053, 10 Ben. 92. The Court of Appeals properly held this to be a formal defect, easily correctible on remand.

With the supplemental libel, libellants submitted a list of interrogatories to be propounded to Del Caribe, calculated to disclose the true status of that company and of the transfer to it of the *Caribe*. On March 15, respondents gave notice that they would move for an order dismissing the libel and vacating the attachment. An accompanying affidavit relied primarily on the doctrine of *forum non conveniens*. The District Court overruled this motion on March 31. The parties then entered into stipulations whereby the respondents' time to answer the libel and interrogatories was extended to June 17. On June 11, they answered, putting in issue various questions relating to the liability arising out of the sinking of the *Cali* and to the transfer of the *Caribe*. At the same time Del Caribe objected to the interrogatories on various grounds. No disposition of these objections appears from the record.

On August 16, Del Caribe gave notice of a motion to dismiss the libel as to it and vacate the attachment. Various grounds were urged calling into question the jurisdiction of the court, the propriety of its exercise, and the adequacy of the allegations to state a claim in the libel. An accompanying affidavit set forth matters relating to the transfer.

On September 20, the District Court found that the nondelivery of the cargo was due to the beaching of the *Cali* in January, 1948; that Del Caribe had been organized in the latter part of February, 1948; and that Transmaritima had sold and transferred the *Caribe* to Del Caribe on February 25.[2] From these facts the district judge concluded that there was no jurisdiction in admiralty to inquire into the relations between the two

---

[2] The district judge also found that the stockholders and managing officers of the two respondents were not identical, but these facts were irrelevant to his disposition of the case and are to the disposition made here.

respondent companies or the sale of the *Caribe*. In any event, the court declined to exercise jurisdiction to look into the transfer since it had taken place between two foreign corporations and in a foreign country. Accordingly, the attachment was ordered to be vacated. While libellants submitted additional evidence upon a rehearing, the court adhered to its original views. 83 F. Supp. 273.

The Court of Appeals affirmed. It held that jurisdiction to set aside a fraudulent transfer before judgment on the main claim was at best "doubtful," that there was discretion to decline jurisdiction on principles of *forum non conveniens,* and that, in any event, libellants had not sustained their burden of producing proof that the transfer was fraudulent.[3] 175 F. 2d 513.

This we believe to be a fair résumé of an uncommonly confused and opaque record. It is especially hampering that the record is not clearer than it is when legal issues of real complexity are in controversy.

I. There is a threshold question as to the jurisdiction of the court below to entertain the appeal. It is claimed that the order vacating the attachment was not a final order and therefore not reviewable.

We believe that the order comes squarely within the considerations of our recent decision in *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541. The litigation arising out of the claim of the libellants has not run its entire course, but the order now here, like that in the *Cohen* case, "appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too impor-

---

[3] The District Court did not dismiss the garnishment proceeding against Del Caribe, since that company was allegedly indebted to Transmaritima and some of the property of the *Cali* had been attached aboard the *Caribe*. The Court of Appeals suggested that the issue of fraud in the transfer of the *Caribe* could be adjudicated as part of the garnishment proceeding.

tant to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U. S. at 546. Appellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible. Cf. *The Panaghia Kathariotisa*, 165 F. 2d 430. Under these circumstances the provision for appeals only from final decisions in 28 U. S. C. § 1291 should not be construed so as to deny effective review of a claim fairly severable from the context of a larger litigious process. See *Cobbledick* v. *United States*, 309 U. S. 323, 328–29. The situation is quite different where an attachment is upheld pending determination of the principal claim. Such was *Cushing* v. *Laird*, 107 U. S. 69, which is urged on us. In such a situation the rights of all the parties can be adequately protected while the litigation on the main claim proceeds.

II. On finding that the *Caribe* had been sold by Transmaritima to Del Caribe prior to the filing of the libel, the District Court deemed itself without jurisdiction to determine whether the transfer was fraudulent. In consequence it felt compelled to treat Del Caribe as the owner of the vessel, and since only the property of Transmaritima could be validly attached the attachment had to be vacated.[4]

The reasoning of the District Court was based on the view that a claim of fraud in the transfer of a vessel

---

[4] Libellants also sought to hold Del Caribe personally liable for the destruction of the *Cali's* cargo of rice on the ground that it was merely the alter ego of Transmaritima. Success on this theory would render the issue of fraudulent transfer irrelevant, for then the assets of either company could be attached. The jurisdiction of a court of admiralty to determine the question of alter ego is undoubted. *The Willem Van Driel, Sr.*, 252 F. 35; *Luckenbach S. S. Co.* v. *W. R. Grace & Co.*, 267 F. 676; *Yone Suzuki* v. *Central Argentine R. Co.*,

690

was a matter for determination by a court of equity and therefore outside the bounds of admiralty jurisdiction. There is a good deal of loose talk to this effect in the reports, concurrent with talk that courts of admiralty exercise their jurisdiction upon equitable principles. Even as to admiralty jurisdiction we must be wary of verbal generalizations unrelated to their applications. Not the least creative achievement of judicial law-making is the body of doctrines that has been derived from the brief words of the Constitution extending the judicial power "to all Cases of admiralty and maritime Jurisdiction." U. S. Const. Art. III, § 2. But it would be beyond human achievement even of a long line of judges especially equipped for dealing with admiralty matters to have produced a wholly harmonious body of admiralty law, or to have written opinions that should not have lent themselves through largeness or looseness of statement beyond the scope of their adjudications.

Unquestionably a court of admiralty will not enforce an independent equitable claim merely because it pertains to maritime property. *E. g., The Eclipse,* 135 U. S. 599, 608, and cases cited. The reasoning of the District Court would be pertinent if the libellants, as creditors of Transmaritima, had gone into admiralty by way of a creditor's bill to set aside a pretended sale of the *Caribe* as a fraud-

---

27 F. 2d 795, 806; *Kingston Dry Dock Co.* v. *Lake Champlain Transp. Co.,* 31 F. 2d 265; *Gardner* v. *Dantzler Lumber & Export Co.,* 98 F. 2d 478. But it is settled doctrine that, apart from any transfer of assets by Transmaritima to Del Caribe, the latter company could not be held personally liable on an alter ego theory, since it came into existence after the *Cali* sank. *Yone Suzuki* v. *Central Argentine R. Co., supra; Kingston Dry Dock Co.* v. *Lake Champlain Transp. Co., supra.*

It is important to note, however, that the relationship between the two respondent companies has an obvious relevance to the issue of fraudulent transfer.

ulent transfer. But that is not the case before us. Libellants went into admiralty on a claim arising upon a contract of affreightment supplemented by charges of negligence in the nondelivery of a sea cargo—matters obviously within admiralty jurisdiction. As an incident to that claim, in order to secure respondents' appearance and to insure the fruits of a decree in libellants' favor, they made an attachment under General Admiralty Rule 2.[5] The issue of fraud arises in connection with the attachment as a means of effectuating a claim incontestably in admiralty. To deny an admiralty court jurisdiction over this subsidiary or derivative issue in a litigation clearly maritime would require an absolute rule that admiralty is rigorously excluded from all contact with nonmaritime transactions and from all equitable relief, even though such nonmaritime transactions come into play, and such equitable relief is sought, in the course of admiralty's exercise of its jurisdiction over a matter exclusively maritime. It would be strange indeed thus to hobble a legal system that has been so responsive to the practicalities of maritime commerce and so inventive in adapting its jurisdiction to the needs of that commerce. Controversies between admiralty and common law are familiar legal history. See Mr. Justice Story's classic opinion in *De Lovio* v. *Boit,* 7 Fed. Cas. 418, No. 3,776, 2 Gall. 398; 4 Benedict on Admiralty cc. 61–63 (Knauth ed. 1940). We find no restriction upon admiralty by chan-

---

[5] The relevant portion of General Admiralty Rule 2 is as follows:

"In suits *in personam* the mesne process shall be by a simple monition in the nature of a summons to appear and answer to the suit, or by a simple warrant of arrest of the person of the respondent in the nature of a capias, as the libellant may, in his libel or information pray for or elect; in either case with a clause therein to attach his goods and chattels, or credits and effects in the hands of the garnishees named in the libel to the amount sued for, if said respondent shall not be found within the District."

cery so unrelenting as to bar the grant of any equitable relief even when that relief is subsidiary to issues wholly within admiralty jurisdiction. Certainly there is no ground for believing that this restriction was accepted as a matter of course by the framers of the Constitution so that such sterilization of admiralty jurisdiction can be said to have been presupposed by Article III of the Constitution.

A few illustrative cases will take us out of the fog of generalities, for the decisions dealing with concrete situations afford a working approach even if not a rigid rule.

Nonmaritime contracts may be examined to determine whether they constitute a valid defense, although the same contracts will not support a libel or cross-libel for affirmative relief. *Armour & Co.* v. *Fort Morgan S. S. Co.,* 270 U. S. 253, 258–60. An equitable claim which does not support a possessory suit may be availed of as a valid defense against a similar suit by the holder of legal title. *Chirurg* v. *Knickerbocker Steam Towage Co.,* 174 F. 188; cf. *The Daisy,* 29 F. 300; see Morrison, *Remedial Powers of the Admiralty,* 43 Yale L. J. 1, 21 (1933). Admiralty cannot entertain a suit to reform a release from liability executed under a mutual mistake merely because it pertains to a maritime claim; but when such a release is pleaded in defense against assertion of that claim, admiralty is not barred from determining whether it was executed by the parties under mutual mistake. *Rice* v. *Charles Dreifus Co.,* 96 F. 2d 80. And so as to accounting, "It is true that a court of admiralty will not entertain a suit for an accounting as such: as, for example, an accounting between co-owners of a vessel, or between maritime adventurers, or between principal and agent . . . [citing cases]. Nevertheless, it has never been true, when an accounting is necessary to the complete adjustment of rights over which admiralty has independent jurisdiction, that it will suspend its remedies midway and require the

parties to resort to another court." *W. E. Hedger Transp. Corp.* v. *Ira S. Bushey & Sons, Inc.,* 155 F. 2d 321, 323, per Learned Hand, J.

In each of these cases a holding that admiralty must stay its hands as to a matter intrinsically nonmaritime but "necessary to the complete adjustment of rights over which admiralty has independent jurisdiction" would have seriously impaired the discharge by admiralty of the task which belongs to it. To recognize these subsidiary powers of admiralty to deal justly with the claims that are within its jurisdiction is not to enlarge the admiralty jurisdiction but to avoid its mutilating restriction. To generalize beyond this is to invite misleading or empty abstractions.

We can now see the immediate problem in its proper perspective. The process of foreign attachment is known of old in admiralty. It has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful. *Manro* v. *Almeida,* 10 Wheat. 473, 489. While the process may be utilized only when a respondent is not found within the jurisdiction, an attachment is not dissolved by the subsequent appearance of respondent. See *Birdsall* v. *Germain Co.,* 227 F. 953, 955; 2 Benedict on Admiralty § 290 (Knauth ed. 1940). Disputes over ownership of attached vessels are of course inevitable since only the respondent's property may be attached. *E. g., Cushing* v. *Laird,* 107 U. S. 69; cf. *McGahern* v. *Koppers Coal Co.,* 108 F. 2d 652; *Kingston Dry Dock Co.* v. *Lake Champlain Transp. Co.,* 31 F. 2d 265. Inevitably such disputes may involve transactions not themselves the subject matter of an independent libel. If jurisdiction be wanting in a court of admiralty when such a controversy arises in the context of an attachment made in a libel over which the court indubitably has jurisdiction, a congenital defect would have to be attributed to the ancient process of foreign attachment. If colorable transfers of property were immune to challenge in

a court of admiralty when a libel *in personam* has been brought in a District where the respondent cannot be personally served, admiralty jurisdiction would be sacrificed to a sterile theory of judicial separatism. No support for such a conclusion is to be found in any decision of this Court or in those of the lower courts which have had so large a share in the development of admiralty law. The relevant rulings look the other way.

In *Lee* v. *Thompson,* 15 Fed. Cas. 233, No. 8,202, 3 Woods 167, Mr. Justice Bradley held that an admiralty court had power to look into an allegedly fraudulent transfer where the question was relevant to execution upon a decree in admiralty. He fully recognized that a libel based solely on the transfer could not be maintained, but where that issue was "incidental to its general jurisdiction, and for maintaining the same, it [the admiralty court] has plenary power to decide, and frequently does decide, conflicting claims to property. Without such power its jurisdiction would often be defeated." 15 Fed. Cas. at 235; 3 Woods at 173. The force of Mr. Justice Bradley's decision is sought to be cut down in that it dealt with execution on a judgment and not with an attachment.[6] The fact is, however, that Mr. Justice Bradley relied in his reasoning on the process of foreign attachment, and reason rejects any significant distinction between the jurisdiction of admiralty to inquire into a fraudulent transfer in the two situations. In both admiralty is not seized of jurisdiction to correct a fraud simply because it is a fraud; that's the business of equity. The basis of admiralty's power is to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies equally whether it is concerned

---

[6] The Court of Appeals apparently regarded this distinction as important, for it held that the issues relating to the vessel *Caribe* might be adjudicated in the garnishment proceeding but not in connection with the attachment.

with executing its judgment or authorizing an attachment to secure an independent maritime claim. Cf. *The New York,* 113 F. 810; *The Columbia,* 100 F. 890 (judgment in admiralty vacated because obtained by fraud).

We must conclude that the District Court was not without power to look into the transfer of the *Caribe* under the circumstances of this suit. But because power exists, its use is not inexorable. Cf. *Massachusetts* v. *Missouri,* 308 U. S. 1, 19. We would be passing on situations not before us were we to attempt now to define when power which we recognize should be withheld. In the circumstances of this case the power should be exercised, for there are good reasons for the attachment. If the libellants are ultimately successful, judgment may well avail them nothing unless duly secured. Cf. *Asiatic Petroleum Corp.* v. *Italia Societa Anonima Di Navigazione,* 119 F. 2d 610. The issues of fact on which libellants' claim of fraud turn do not appear to be complicated and they may be speedily adjudicated by the District Court prior to a hearing on the affreightment contract.

III. It is urged that, even if there existed power to ascertain whether the transfer was fraudulent, vacation of the attachment was justified by libellants' failure to establish a *prima facie* case of fraud. No doubt, the ultimate burden of establishing a fraudulent transfer was upon libellants. See *Cushing* v. *Laird,* 107 U. S. 69, 83–84. Under Admiralty Rule 23 of the District Court for the Canal Zone,[7] the district judge might have required

---

[7] The relevant portion of Rule 23 is as follows:

"In case of the attachment of property . . . the party arrested or any person having a right to intervene in respect of the thing attached, may, upon evidence showing any improper practice or a manifest want of equity on the part of the libellant, have an order from the judge requiring the libellant to show cause instanter why the arrest or attachment should not be vacated." See 5 Benedict on Admiralty (Whitman ed. 1949) 234.

libellants to present their proof in order to determine whether substantial questions of fact were raised respecting the fraudulence of the transfer. Had libellants then failed to respond without adequate reason, the attachment would properly have been vacated.

Rule 23 was in substance invoked by respondents, as the Court of Appeals held, but the record does not support the view that its invocation put libellants to their proof that the transfer was fraudulent. They had no reason to believe that such proof was needed before trial. Neither of the two motions of respondents to vacate the attachment rested on an absence of fraud as a matter of fact. Respondents presented evidence through affidavits that a new corporation had been formed and a transfer of title to the vessel effected, but this was only to support their charges that the court lacked jurisdiction, that in any event it should decline jurisdiction under principles of *forum non conveniens,* and that the allegations in the libel did not state a cause of action. Nor were libellants put on notice by the District Court's first opinion to put in proof on rehearing. Its holding was based on lack of jurisdiction to inquire into the transfer or, alternatively, on discretion to decline its exercise. Quite clearly it did not determine the issue of fraud in the transfer. The opinion denying rehearing did not break new ground. On these facts, the attachment could not be vacated for a failure of libellants to support their charge of a fraudulent transfer.[8]

---

[8] The eight months intervening between the filing of the libel and the opinion on rehearing were spent largely on respondents' motions and to afford respondents opportunity to file answers. It is also pertinent that libellants' interrogatories to Del Caribe were never answered and the exceptions taken to them never passed on by the District Court. The evidence contained in respondents' affidavits was inadequate to support any determination of the fraud issue. Of course, if the court had required libellants to present such proof

IV. There remains the question whether the District Court's order may be justified as an exercise of discretion to decline jurisdiction under the doctrine of *forum non conveniens*. The doctrine is of long standing in admiralty, but this Court has not previously had to apply it to a suit brought by a United States citizen. Such application has been rare even in the lower federal courts. Cf. *Canada Malting Co.* v. *Paterson Steamships, Ltd.*, 285 U. S. 413; *United States Merchants' & Shippers' Ins. Co.* v. *A/S Den Norske Afrika OG Australie Line*, 65 F. 2d 392; see Braucher, *The Inconvenient Federal Forum*, 60 Harv. L. Rev. 908, 920–21 (1947); Bickel, *Forum Non Conveniens in Admiralty*, 35 Cornell L. Q. 12, 41–47 (1949). We need not now decide the abstract question whether United States admiralty courts may decline jurisdiction over libels brought by United States citizens. Discretion could not sustain declination in this case. Application of *forum non conveniens* principles to a suit by a United States citizen against a foreign respondent brings into force considerations very different from those in suits between foreigners.[9] The District Court gave no indication that it recognized such considerations. Its opinion indicates that in so far as it may have exercised discretion to decline jurisdiction it was moved to do so by its view that such jurisdiction does not exist. But, in any event, it was improper under the circumstances here shown to remit a United States citizen to the courts of a foreign country without assuring the citizen that respondents

as they had, it would have been for them to move that the exceptions to the interrogatories be overruled. But, as indicated, the importance of such a move was never made clear.

[9] Compare *Koster* v. *Lumbermens Mutual Casualty Co.*, 330 U. S. 518, 524: "In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." See also *O'Neill* v. *Cunard White Star, Ltd.*, 160 F. 2d 446.

would appear in those courts and that security would be given equal to what had been obtained by attachment in the District Court. The power of the District Court to give a libellant such assurance is shown by *Canada Malting Co.* v. *Paterson Steamships, Ltd.,* 285 U. S. 413, 424. See also *The City of Agra,* 35 F. Supp. 351. While the District Court exercised discretion to vacate only the attachment and not to dismiss the entire libel, libellants' rights were seriously impaired by their loss of security. The importance of the right to proceed by attachment to afford security has been emphasized. *E. g., In re Louisville Underwriters,* 134 U. S. 488; *Asiatic Petroleum Corp.* v. *Italia Societa Anonima Di Navigazione,* 119 F. 2d 610. Libellants' right to maintain the attachment will depend on their ability to prove fraud in the transfer of the *Caribe* upon a hearing. They are entitled to have that hearing.

The case must be reversed and remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.