381 F.2d 228
 Luis P. UNTALAN, as Administrator of the Estate of Trinidad T. Calvo, Deceased, and Luis P. Untalan, as Ancillary Administrator of the Estate of Ismael T. Calvo, Deceased, and Vicenta T. Calvo, Appellants,
v.
Paul M. CALVO, Paul M. Calvo as Administrator of the Estate of Eduardo T. Calvo, Deceased, Edward M. Calvo, Thomas J. M. Calvo, Veronica M. Calvo and Ricardo T. Calvo, Appellees.
 No. 21075.
 United States Court of Appeals Ninth Circuit.
 July 17, 1967.
 
 David M. Shapiro, Agana, Guam, for appellants.
 E. R. Crain, Agana, Guam, for appellees.
 Before BROWNING and DUNIWAY, Circuit Judges, and PENCE, District Judge.
 PER CURIAM:
 
 
 1
 On November 8, 1965 appellants filed in the District Court of Guam a complaint for dissolution of partnership, for accounting and discovery of assets.
 
 
 2
 From Count I thereof it seems that in 1947, three of the four Calvo brothers, i. e., Trinidad, Eduardo and Ricardo, set up a partnership in Guam, viz., Tomas A. Calvo and Sons. The agreement provided that in order to preserve the business in their own families, as "a specific covenant" each of the three partners "bequeaths and assigns" his interest in the partnership, in the event of his death, to his wife and children. On September 18, 1948 Trinidad died. The partnership business was, nevertheless, continued by both Eduardo and Ricardo until Ricardo moved to California in 1957. Eduardo continued to run the business until he died on June 21, 1963, and thereafter his administrators and heirs, appellees herein, continued to operate the business. There was never any formal dissolution of the partnership nor was there ever any accounting made to the estate or heirs of Trinidad even though the alleged assets of the partnership exceeded $20,000. Ricardo, the only surviving partner, even though so requested prior to suit being filed, refused to take any action on dissolution and accounting.
 
 
 3
 Count II alleged that either before Trinidad died (1948), he, Eduardo and Ricardo and a fourth brother Ismael set up another partnership, namely Stud-Pac Motor Company, or in the alternative, after Trinidad died, Eduardo, Ricardo and Ismael formed that named partnership. The alternative pleading stems from the allegation that the records of the Department of Finance, License and Registration of Guam show that a partnership agreement was filed on July 12, 1957 but the agreement itself is missing from the official files. Ismael died in California on January 26, 1962. After Ismael died, Eduardo operated Stud-Pac until he, Eduardo died in June 1963. Thereafter, and without any accounting, the defendants continued to manage the Stud-Pac partnership, and its assets were alleged to be more than $35,000.
 
 
 4
 As the complaint was first filed, the plaintiffs were Luis P. Untalan as administrator of the estate of Trinidad, as well as the same Luis P. Untalan as ancillary administrator of the estate of Ismael. The prayer of the complaint was that each partnership be declared to be dissolved; that accounting be made of all partnership dealings and transactions in each partnership from the date of their respective formations; that defendants disclose all partnership assets; that a receiver be appointed for each partnership; and that the several assets be distributed according to the respective interests of the parties.
 
 
 5
 On January 18, 1966 defendants moved to dismiss the complaint because of misjoinder, failure to join the heirs of Trinidad as indispensable parties, lack of jurisdiction and because "the claims of the plaintiffs * * * being in the estates of" Eduardo and Ismael! After hearing, and over the objection of the plaintiffs, as to Count I the court ordered that because of the "testamentary disposition" of the partners' interests set out in the partnership agreement, Trinidad's heirs must be joined as indispensable parties and involuntary plaintiffs to any accounting of his alleged share, and allowed an amended pleading to be filed. The court denied the motion to dismiss Count II.
 
 
 6
 On February 7, 1966 defendants answered Count II denying allegations of contributions of capital to Stud-Pac and urging that Ismael's claim, if any, is barred by laches and statute of limitations. On that same date plaintiffs filed their amended Count I, adding the additional plaintiffs as directed.
 
 
 7
 On February 23 (and before they had answered the amended Count I) defendants moved for summary judgment under F.R. 56, urging that "Sections 2424, 2425(4) and 2437 of the Civil Code of Guam show that the defendants are entitled to judgment as a matter of law", i. e., that the statute of limitations had run. At the hearing on this motion on March 11, 1966, the court stated: "I am going to set this case for pretrial conference." (TR 16.) Plaintiffs' counsel protested: "[T]he involuntary plaintiffs have not come in yet. * * * I am trying to get them served in the States. * * *" (TR 16.) The court replied: "Well, I am not so concerned about that for purpose of pretrial conference. I want to find out what happened here. * * * It is obviously a family squabble", and ordered a pretrial conference for April 11, 1966, but made no ruling on the motion for summary judgment. On April 8, 1966 defendants answered the amended Count I and urged among other defenses that the claims of the heirs and the administrator were barred "by laches and limitations."
 
 
 8
 The record discloses no transcript of what was said at that pretrial conference, but on April 11, 1966, the court filed a pretrial order that: "The above-entitled action is herewith transferred to the Island Court of Guam for determinations in probate and for the exercise of its probate jurisdiction as a condition precedent to the jurisdiction of the District Court." The court also stated: "[S]o much time has elapsed that both the statute of limitations and the doctrine of laches are applicable to the principal plaintiff, Vicenta T. Calvo" (one of the involuntary plaintiffs who had not yet entered her appearance and was not represented by counsel at the "preliminary pretrial conference"). The court opined that the complaint as filed "confuses two separate estates, simply upon the ground that the estates have a common administrator", but continued: "For purpose of referring the actions to the Island Court for that Court's consideration, the improper joinder is not considered", and concluded: "The complaint does not show and counsel for the plaintiffs admits that the permission of the Island Court, sitting in probate, was not obtained before the administrator filed this complaint. It is obvious that the required research by a master, over a possible period of 17 years, could involve expenditures of many thousands of dollars, which charges would fall upon the plaintiff, and permission should be obtained from the Court before the administrator is authorized to make such charges or to undertake such litigation." Then the court ordered:
 
 
 9
 "1. The above action, Civil No. 112-65 is transferred to the Island Court for the consideration of that Court and determination:
 
 
 10
 (a) Whether the Court has jurisdiction within the existing estates to grant any relief properly due.
 
 
 11
 (b) Whether the Court wishes to approve litigation on the part of the administrator and permit the administrator to charge the estate with costs of litigation.
 
 
 12
 (c) If the Island Court shall determine that the administrator shall be authorized to undertake such litigation and shall approve an action in the District Court, the case may be re-transferred to the District Court as to the Trinidad T. Calvo interest, but the administrator must file a second and different action as to any other estate."
 
 
 13
 From that order plaintiffs appeal.
 
 
 14
 By transferring the action to the Island Court of Guam and purporting to give to that court the sole power to decide whether it had jurisdiction over the case as well as to prohibit or authorize the filing of a complaint, the district court thereby completely divested itself of control over the action and terminated the litigation in the district court. The court's order was a final one, appealable to this court.[1]
 
 
 15
 The Code of Civil Procedure of Guam[2] unquestionably gave the district court original jurisdiction over the causes of action presented by the complaint because in each count the sum involved exceeded $2,000.[3] The District Court of Guam having jurisdiction, it has the duty to render a decision in a case properly before it.
 
 
 16
 Nothing appears in the record or the Code of Civil Procedure of Guam which can justify the action of the district court in arbitrarily transferring the case to the Probate Court of Guam; nor can there be any condonation of such disposition before the involuntary plaintiffs were served with process and allowed to answer in the action. The alleged indispensable parties were ordered to be joined by the court itself and no action should have been taken by the district court which was clearly detrimental to the interests of those parties, before they had entered their appearance and had been heard on any action proposed to be taken by the court.
 
 
 17
 The "preliminary pretrial" of the nature here conducted by the judge was clearly beyond the purpose and intent of F.R. 16.[4] That rule calls for a conference of counsel for all parties with the court to prepare for, not avert, trial, and aimed at producing an order that reflects agreements made by the parties to best bring about a speedy and just trial.[5] nothing in the rule permits a peremptory disposition of a suit in the manner reflected here.
 
 
 18
 The order of the district court transferring the action to the Probate Court of Guam is reversed.
 
 
 19
 The last clause of the court's order, "but the administrator must file a second and different action as to any other estate", was (not unreasonably) construed by plaintiffs' counsel as a severance and dismissal of Count II.[6] Because of our ruling, supra, we need not reach that point. This court on the record before it could not and does not determine whether there was in fact a misjoinder of causes of action, it does but direct the attention of the district court to F.R. 21.
 
 
 20
 The district court is directed to proceed with the orderly consideration and disposition of the complaint, including such action by the court under Rule 21 as the court may deem advisable.
 
 
 
 Notes:
 
 
 [1]
 Cohen v. Beneficial Indus. Loan Corporation, 1949, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528; Swift & Co., Packers v. Compania Colombiana Del Caribe, 339 U.S. 684, 688-689, 70 S.Ct. 861, 94 L.Ed. 1206; Cook v. Bostich, Inc., 2 Cir., 1964, 328 F.2d 1, 2; Arizona Barite Co. v. Western-Knapp Engineering Company, 9 Cir., 1948, 170 F.2d 684, 685-686. Cf. also, Muller v. Reagh, 150 Cal.App.2d 99, 309 P.2d 826
 
 
 [2]
 C.C.P. of Guam, Section 62, reads in part: "* * * [T]he District Court of Guam * * * has original jurisdiction in all other causes in Guam except those over which original jurisdiction has been transferred to and vested in the Island Court of Guam by Section 82 of this title."
 
 
 [3]
 Sections 82(4) and 82(5) of the C.C.P. of Guam gives jurisdiction to the Island Court of Guam:
 "4. In all cases at law under the laws of Guam in which the demand, exclusive of interest and costs, or the value of the property in controversy does not amount to more than $2,000, except cases which involve the legality of any tax, impost, assessment, toll or fine; "5. In actions for dissolution of partnership, where the total assets of the partnership do not exceed $2,000;"
 
 
 [4]
 Padovani v. Bruchhausen, 2 Cir., 1961, 293 F.2d 546, 548
 
 
 [5]
 Handbook for Effective Pretrial Procedure, adopted by the Judicial Conference of the United States, 1964, 37 F.R.D. 259, 272
 
 
 [6]
 Appellants' Opening Brief, pp. 16-17