**INTEROCEAN SHIPS, INC., a Delaware Corporation, Plaintiff**

**v.**

**SAMOAN GASES, a Corporation, Defendant**

High Court of American Samoa
Trial Division

CA No. 123-85

September 3, 1993

Before RICHMOND, Associate Justice, AFUOLA, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, William H. Reardon and William L. Banning
For Defendant, Gata E. Gurr and Arthur Ripley, Jr.

Opinion and Interim Orders:

Defendant's motions for reconsideration and continuance and plaintiff's motion to amend the complaint came regularly for hearing on August 20, 1993. We consider them below.

*I. Motion to Amend Complaint*

Plaintiff asks the court's permission to amend its complaint to include the major shareholder and president of Samoan Gases as an additional defendant, under the theory that he is the "alter ego" of

145

defendant corporation. Plaintiff provides numerous citations indicating that the court has the authority to allow amendment of a complaint to include an alter ego defendant, if such amendment should be found to be proper. We also note that the doctrine does have its place in admiralty law. *See, e.g., Swift and Company Packers v. Compania Colombiana Del Caribe S.A.*, 339 U.S. 684 (1950); *Talen's Landing, Inc. v. M/V Venture*, 656 F.2d 1157 (5th Cir. 1981). But plaintiff has failed to convince us, at this time, that the alter ego doctrine is applicable in the instant case. "Whether a corporate entity will be disregarded depends upon the trial court's findings of fact." *Talen's Landing, Inc. v. M/V Venture*, 656 F.2d at 1160. Plaintiff has not proved such facts as would be necessary to the application of the doctrine. Contrary to assertions by plaintiff's counsel, the alter ego doctrine is not simply a "collection matter" but is an equitable doctrine which disregards the legal theory upon which "large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted." *Anderson v. Abbott*, 321 U.S. 349, 362 (1944). As such, it is to be applied cautiously and only upon a proper showing, which has not yet been done. The motion to amend the complaint, therefore, is denied.

## II. Motion for Reconsideration of Denial of Summary Judgment

Defendant notes that we misread the previous memorandum in support of its motion for summary judgment.[1] We apologize. We also deny his motion for reconsideration.

Having carefully reread, as requested, the memoranda in support of the initial motion and the motion for reconsideration, we find no serious error in the result of our August 3, 1993, opinion and interim orders. While it is true that we misinterpreted the basis of defendant's initial motion, our further discussion in that opinion on the matter of subrogation supported our ultimate decision. We will restate our reasoning.

. Defendant's position, as we understand it, is that there are five separate areas of claimed damage: 1) seamen injury and death settlements; 2) seamen maintenance-and-cure payments; 3) repairs for the

---

[1] Defendant has retained additional counsel, who appeared on his behalf at the hearing on the present motions and who, from the change in tone and approach, we assume has prepared the concomitant memoranda.

vessel Ocean Pearl; 4) lost profits; and 5) attorney's fees. Defendant argues that items one and two have been fully paid by the plaintiff's insurer, transforming the latter into the real party in interest with respect to those two items of damages and thus rendering plaintiff unable to claim them. Defendant would have item three fall into this category as well, but for the fact that plaintiff had to pay a deductible amount of $20,000 or $30,000 on the policy. Defendant then states that the amount of this payment should be treated identically to item four; that settlement payments from other tortfeasors be applied against these amounts *pro tanto*. The result, by defendant's calculus, is that plaintiff has received an impermissible "windfall," i.e. a greater amount than its damages.[2]

Defendant's arguments fail to persuade. With respect to items one and two, defendant states that we misinterpreted, "without justification, or authority of any kind," *Shambley v. Jobe-Blackley Plumbing and Heating Co.*, 142 S.E.2d 18 (N.C. 1965). Defendant argues that when the *Shambley* court said that an insurer becomes the real party in interest when it has compensated a plaintiff for its "entire loss," it meant by "entire loss" the entire amount of any *single* item of damages prayed for by a plaintiff. Therefore, the argument continues, with respect to the first two items of plaintiff's damages, the real party in interest, and thus the only party entitled to recover these damages, is the insurer and not plaintiff. Defendant seeks to distinguish our citation of *Howard v. Smoky Mountain Enterprises*, 332 S.E.2d 200 (N.C. 1985), on the basis that it was "about one particular claim," implying that *Shambley* was, in contrast, "about" more than one claim. We ask defendant's counsel to read *Shambley* once again.[3]

---

[2] A necessary element in arriving at this solution is that item five (attorney's fees) are not recoverable. We mention here, to avoid misunderstanding, that we have not yet ruled on the recoverability of attorney's fees in this action.

[3] We note that counsel was given several days to provide the court with additional authority for its arguments. Since we assume counsel capably researched the matter, the failure to provide such additional authority gives us that much more confidence in our "plain meaning" interpretation of the instant case law, as opposed to defendant's rather strained interpretation. In the future, when confronted with a valid difference of interpretation, it would be wise for defendant's counsel to find additional authority for his position, rather than baldly assert plain error on the court's part. We remind counsel that the court is not

147

Defendant further argues that if "entire loss" means the full amount claimed by a plaintiff, then all a plaintiff would need do to defeat the right of a defendant to confront the real-party insurer would be to invent an additional claim of damages not directly related to the actual loss. However, this approach would make an insurer a necessary party to virtually every action involving an insurance settlement. Confronted by this dilemma, the court chooses to remain with its original holding.

With respect to the third and fourth areas of damages, defendant takes exception to our application of the pro rata rule to the apportionment of damages. Defendant cites a legal encyclopedia for the general statement that damages are to be apportioned *pro tanto* among joint tortfeasors. However, the rule in this area of admiralty is that damages are to be shared pro rata. Defendant has not attempted to distinguish the cases cited in our previous decision, nor has it cited other applicable case law to the contrary. The practice of law would be easier, and law libraries much smaller, if all legal research could begin and end with Am. Jur. Unfortunately for defendant's argument, it does not. In this matter, damages are to be awarded in direct proportion to percentage of liability, regardless of the dollar amounts paid by other settling parties.

The motion for reconsideration is, therefore, denied.

### III. Motion for Continuance

Defendant has made a motion to continue the remainder of this trial beyond September 13, 1993, stating that it requires additional time to locate and depose witnesses. Defendant professes "complete surprise" that it is required to bear the burden of showing the degree of fault of other alleged tortfeasors. Counsel for defendant have filed a memorandum in support of this motion, in which they have threatened to withdraw from representation if the court does not grant the continuance.

First, it should not be a "complete surprise" to such competent counsel that their client bears the burden of proof of an affirmative

---

opposing counsel.

defense.[4]   This sudden realization of the law can hardly be "unexpected." This action commenced nearly eight years ago, and there has been more than ample time to prepare an adequate defense. That "[t]he Court gave no indication of its concern or interest in this issue during the trial on liability, or at any time in the hearings in the prior 8 years," as defendant states, is hardly dispositive and barely relevant. The court cannot, at the outset of or during any litigation, inform parties of all of the legal rights and duties involved in their particular theories of the case and litigation strategies.   Our legal system assigns such responsibilities to attorneys, not courts.

Plaintiff's June 28, 1993, "Request for Clarification," evinced nothing more than that party's uncertainty, at that time, of the court's view of the applicable law.[5]   Defendant asserts that this document created confusion. Even so, such confusion could have arisen only eight to ten weeks prior to the scheduled conclusion of this trial. In addition, defendant claims to have realized that it carried the burden of proof on this issue on August 3, 1993; thus, if it was indeed misinformed, it was only for a period of five weeks, at most. This time is insignificant in comparison with both the inception of this action in 1985 and the beginning of the instant trial in December of 1992.

Furthermore, the threat by defendant's counsel to withdraw from defendant's representation if the court refuses to grant the requested continuance is grossly inappropriate.   It evinces a sorely deficient understanding of the ethical and legal responsibility an attorney bears towards his client and to the court. It is also poor trial strategy.

High Court Rule 104, as amended on May 17, 1993, states that the conduct of attorneys in American Samoa shall be governed by the

---

[4] It seems somewhat ironic that the court's first opinion and interim orders issued on August 3, 1993, rejected plaintiff's argument that, having failed to raise the affirmative defense of third-party fault, defendant should be precluded from making a showing of such fault at trial.

[5] Defendant's memorandum suggests that the court and the plaintiff were in collusion, keeping silent as to the issue of burden of proof that they had mutually agreed to place upon the defendant. However, at this time at least, we decline to read into that document any deliberate intent by defendant to make such a serious, grave and blatantly false accusation.

149

American Bar Association Model Rules of Professional Responsibility. Model Rule 1.16 discusses the withdrawal of counsel. It states, *inter alia*, that an attorney acting without permission from his client must either show good cause for withdrawal or show that withdrawal can be accomplished without a material, adverse effect on the client's interests. Good cause does *not* include an inability to persuade a court to rule favorably on a motion. Casting a client adrift on the eve of trial has serious adverse consequences.

Model Rule 1.16(c) states that "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." *See Permissive Withdrawal/Representation*, Law. Man. on Prof. Conduct (ABA/BNA) 31:1101 (1984), and cases cited *infra*. *See also Rakhshan v. Fuimaono*, 18 A.S.R.2d 77 (Trial Div. 1991). The court has discretion in granting motions to withdraw. *See, e.g., Hodcarriers, Building and Common Laborers Local Union No. 89 v. Miller*, 53 Cal. Rptr. 251 (1966); *Goldsmith v. Pyramid Communications*, 362 F. Supp. 694 (S.D.N.Y. 1973). Improper withdrawal of representation may expose counsel to liability for the resultant harm to the client. In addition, any intentional breach of the Model Rules of Professional Responsibility is sufficient grounds for the imposition of disciplinary sanctions. H.C.R. Rule 155.

Setting aside these questionable trial tactics, defendant has plainly not presented any justification to continue the final stages of this trial. The motion for continuance is, therefore, denied. This further trial has been scheduled for September 13, 1993, at 9:00 a.m. Both of defendant's counsel shall then personally appear.

It is so ordered.