NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1276
_____

BUNGE, S.A.,
Appellant

v.

ADM INTERNATIONAL SARL; AMERICAN PETROLEUM TANKERS X LLC;
ARCHER-DANIELS-MIDLAND COMPANY; ASHLAND SPECIALTY
INGREDIENTS G.P.; CROWLEY GLOBAL SHIP MANAGEMENT, INC.; MOSAIC
FERTILIZER, LLC

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:22-cv-00026)
U.S. District Judge: Honorable Richard G. Andrews

_____

Argued: January 23, 2023

Before: BIBAS, NYGAARD, and FUENTES, *Circuit Judges*

(Filed: June 2, 2023)


J. Stephen Simms [**ARGUED**]
Simms Showers
201 International Circle
Suite 230
Baltimore, MD 21030
    *Counsel for Appellant*

Amanda D. Price
Squire Patton Boggs
600 Travis Street
Suite 6700
Houston, TX 77002

John J. Reilly [**ARGUED**]
Squire Patton Boggs
1211 Avenue of the Americans
26th Floor
New York, NY 10036
         *Counsel for Appellee*

_____

OPINION*

_____

BIBAS, *Circuit Judge*.

Litigation involves uncertainty. There is always a risk that after judgment is entered, the other side will not pay. Security is sometimes available to mitigate this risk, but even admiralty's powerful attachment procedure has limits.

Bunge has tested those limits. It sought to attach ADM's property on two claims. One is expressly, voluntarily contingent on external events. That claim does not meet the standard for maritime attachment. But the other claim, although contingent, is a complete cause of action under the relevant law and has been asserted. It thus supports maritime attachment. So we will reverse the District Court's order vacating the writ of maritime attachment.

_____

\* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

# I. FACTS AND HISTORY

The M/V *Orient Rise* is a cargo ship. In late 2018, Tongli Shipping chartered it to Bunge, which chartered it to ADM International. Tongli and Bunge had a time charterparty: Bunge got to use the vessel for a fixed amount of time. Bunge and ADM, by contrast, had a voyage charterparty: ADM got to use the vessel for a specific trip. It was to carry fertilizer from Saudi Arabia to the Mississippi River.

But when the *Orient Rise* arrived off the Mississippi River in February 2019, things went awry: it lost two anchors, had issues offloading cargo, and spent time at the repair berth. This was all expensive and time-consuming, and no one picked up the bill. So when the *Orient Rise* finished offloading, the berth's owner arrested it. The vessel's owners posted a $10 million bond to free it. The owners eventually settled the dispute with the berth's owner, paying it $3.25 million.

In July 2019, Tongli filed a London arbitration against Bunge. Tongli claimed that the time charterparty required Bunge to indemnify it for the settlement. Bunge counterclaimed, saying that Tongli owed it money for loss of hire under a safe-port warranty in the time charterparty.

At the same time, Bunge filed a London arbitration against ADM. This arbitration was Bunge's Plan B: if Bunge lost on Tongli's claim or its own counterclaim, it would then try to get that money from ADM. Bunge argued that if it had to indemnify Tongli for the settlement, then ADM must in turn indemnify it. And if Tongli did not pay Bunge for loss of hire, then ADM had to do so under a safe-port warranty in the voyage charterparty. The

former claim is for more than $7 million (after interest), and the latter is for roughly $480,000.

Little has happened in these arbitrations. So in January 2022, Bunge filed a complaint in the District of Delaware. The complaint alleged breach of contract and sought to attach and garnish some of ADM's funds under Supplemental Rule B as security for an eventual judgment. The District Court issued a writ of maritime attachment; but then, after a hearing, it issued an order vacating the writ. The court reasoned that Bunge had not met its burden of showing a valid prima facie admiralty claim because both of its claims were contingent on the outcome of its arbitration against Tongli. Bunge filed this interlocutory appeal of that order.

This case sounds in admiralty. The District Court had jurisdiction under 28 U.S.C. § 1333(1). We have jurisdiction under 28 U.S.C. § 1291, as orders vacating maritime attachments are appealable collateral orders. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950). We review an order vacating a writ of maritime attachment for abuse of discretion and the legal conclusions supporting the order de novo. *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 966 (9th Cir. 2010).

## II. RULE B ATTACHMENT AND CHOICE OF LAW

We start with some background on maritime attachment. Under Supplemental Rule B, if a defendant cannot be found within a district, a plaintiff can garnish and attach the defendant's property there after filing a complaint. Fed. R. Civ. P. Supp. R. B(1)(a). This complaint is subject to a heightened pleading standard: it must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be

4

able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). Once the court issues a writ of maritime attachment, the defendant gets a hearing. Fed. R. Civ. P. Supp. R. E(4)(f). At this hearing, the plaintiff bears the burden of showing, among other things, "a valid prima facie admiralty claim against the defendant." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009); *see also* Fed. R. Civ. P. Supp. R. B, advisory comm. nn., 1985 amend. ("The rule envisions that the order will issue when the plaintiff makes a prima facie showing that he has a maritime claim against the defendant ….").

The requirement of a valid prima facie admiralty claim has two components: it must be a valid prima facie claim and it must sound in admiralty. We agree with the Second Circuit "that federal maritime law governs whether a claim sounds in admiralty and that the relevant substantive law governs whether a plaintiff has alleged a valid prima facie claim." *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 495 (2d Cir. 2013). As the Second Circuit explained:

> Admiralty law provides the remedy; substantive law defines the right to the remedy. Assessing the prima facie validity of a claim is a substantive inquiry that should be governed by the relevant substantive law. By contrast, whether a claim sounds in admiralty is a procedural question, the answer to which supplies the source of a court's subject matter jurisdiction.

*Id.* As we have already mentioned, this claim sounds in admiralty. As for the relevant substantive law, both the time charterparty and the voyage charterparty selected the law of

5

England. So we must consider whether Bunge's claims against ADM are valid prima facie claims under English law.

First, though, we must address what counts as a valid prima facie admiralty claim. The standard is well established when a claim's *factual* adequacy is challenged. Recall that the rules establish a heightened pleading standard for claims supporting attachment. Fed. R. Civ. P. Supp. R. E(2)(a). Although "the precise boundaries of such a heightened pleading requirement are not clearly defined," some courts have held that the complaint must "afford a *reasonable belief* that the claim has merit." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 541–42 (4th Cir. 2013) (internal quotation marks omitted). And courts have found that a valid prima facie admiralty claim is assessed on the face of the complaint. *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp., N.V.*, 572 F.3d 96, 104 n.2 (2d Cir. 2009). So when evaluating the factual sufficiency of a claim, the standard is relatively clear. *See Al Fatah Int'l Nav. Co. v. Shivsu Canadian Clear Waters Tech. (P) Ltd.*, 649 F. Supp. 2d 295, 297–99 (S.D.N.Y. 2009) (explaining that a valid prima facie claim must be "facially sound").

But courts have had less occasion to rule on the *legal* sufficiency of a claim. We hold that, for a valid prima facie admiralty claim, (1) the claim must be ready to be adjudicated under the relevant law and (2) the claimholder must have asserted the claim. These requirements further Rule B's core purpose of letting a plaintiff hale a defendant into court and hold the defendant's property while a case is ongoing. A more lenient standard would risk abuse of Rule B by letting plaintiffs grab property before asserting the claim for which the

6

property is security. How these requirements look in practice will vary depending on the relevant law. We turn now to English law.

### III. THE $7 MILLION CLAIM SUPPORTS ATTACHMENT

**A. This claim is alternatively for breach of contract or for implied indemnity**

Bunge's first claim against ADM is that ADM is liable for Bunge's possible payment to Tongli. The leading English case on such liabilities is *The Caroline P. Telfair Shipping Corp. v. Inersea Carriers S.A. (The Caroline P)* [1985] 1 WLR 553; *see Bottiglieri Di Na Vigazione Spa v. Tradeline LLC*, 472 F. Supp. 2d 588, 590 & n.12 (S.D.N.Y. 2007), *aff'd*, 293 F. App'x 36 (2d Cir. 2008). *The Caroline P* "identif[ied] at least three ways in which a person, A, who has become liable to B may be able to obtain redress from C":

> The first way is by an action for damages for breach of contract (or warranty). In such a case A will be in a position to claim that the incurring of his liability to B flowed directly from an act of C which constituted a breach of a contract between A and C or of a warranty given by C to A. The damages will be assessed in accordance with *Hadley v. Baxendale* (1854) 9 Exch. 341 principles. The cause of action will date from the date of breach.
>
> The second way is by a claim on an express indemnity. In such a case the extent of the indemnity and the time at which the cause of action arises will depend on the construction of the contract….
>
> The third way in which A may claim against C in respect of sums which he has had to pay to B is under an implied indemnity. As I understand the matter, such an implied indemnity would prima facie be a general indemnity of the kind recognized by the common law…. If, for instance, [A] was bound to pay a sum to [B] and [C] was bound to indemnify [A],…then [A] could not sue [C] unless he could aver payment to [B].

*The Caroline P* [1985] 1 WLR at 566–67 (cleaned up). So we must determine whether Bunge's $7 million claim is for breach of contract, express indemnity, implied indemnity, or some combination of those.

7

Bunge's arbitration complaint labels this claim as both a "**Breach of the Voyage Char-terparty**" and, "[f]urther or alternatively," as an "**Implied Indemnity**." D.I. 39, Ex. 4 at 14, 17. The breach-of-contract theory is based on ADM's sending the vessel to an unsafe berth in violation of the charterparty's safe-port warranty; Bunge's measure of damages is whatever amount it becomes obligated to pay to Tongli. The implied-indemnity theory likewise says the vessel's problems were "the consequence of compliance by the Master and/or [Bunge] with [ADM's] orders [to proceed to those berths]." D.I. 39, Ex. 4 at 17. It has the same measure of recovery: indemnification of any possible liability to Tongli.

*The Caroline P* confronted a similar situation. It noted that "[t]he owners' right to re-cover" could be described as "a claim on a breach of an implied term of the charterparty," "a claim based on an implied indemnity against liability," or "a claim based on an implied general indemnity." *The Caroline P* [1985] 1 WLR at 567–68. The court did not rule on how to characterize that right, as "the case [had] been argued on the basis of an implied indemnity." *Id.* at 568. But the court then noted:

> Furthermore, it appears that where a person is entitled to rely on an implied indem-nity he can make a claim on such an indemnity in addition to making a claim based on some express provision of his contract with the indemnifier or (semble) a claim for damages for breach of contract.

*Id.* In other words, although one might think that (1) an implied indemnity and (2) indem-nification based on breach of contract are the same, under English law, they are not. Not only are the claims different, but it seemed to that court that the two could be brought at the same time. We thus analyze Bunge's claim as both an implied indemnity and a breach of contract.

8

**B. As an implied indemnity, this is not a valid prima facie claim**

Under English law, a cause of action for general indemnity is not complete until there has been payment to a third party. *The Caroline P* [1985] 1 WLR at 566–67. (An implied-indemnity claim is prima facie one for general indemnity, and Bunge has done nothing to rebut this presumption. *Id.*) And here, it is undisputed that Bunge has not paid Tongli—indeed, there has not even been a judgment. Because Bunge's cause of action is not complete, it cannot be adjudicated yet. So it is not a valid prima facie admiralty claim, and Rule B attachment was unavailable.

Bunge's objections fail. First, it argues that "contingent claims are still 'claims' within the meaning of Rule B; indeed, a primary purpose of maritime attachments is to obtain security pending resolution of a disputed case." Appellant's Br. 11–12. But Rule B does not use the word "claims" at all. Instead, *Aqua Stoli*'s "valid prima facie admiralty claim" standard is our guiding light. And this claim is not a valid prima facie admiralty claim because, under English law, it is not a complete cause of action. Besides, if a claim *this* contingent sufficed, then almost any claim would do. *See Contingent Claim*, *Black's Law Dictionary* (11th ed. 2019) ("A claim that has not yet accrued and is dependent on some future event that may never happen."). Thus, we require not just a claim, but "a valid prima facie" one. *Aqua Stoli*, 460 F.3d at 445.

Second, Bunge argues that it "made a *prima facie* showing that even a contingent indemnity claim is a valid cause of action under English law." Appellant's Br. 12. In other words, Bunge would have us hold that it need make only a prima facie showing that it has a valid prima facie claim. But such a rule would water down the *Aqua Stoli* standard and

9

let plaintiffs attach property with only selective citations to foreign law. The validity requirement is not itself subject to the prima facie standard.

**C. As a breach of contract, this is a valid prima facie claim**

If, on the other hand, we look at this claim as one for breach of the safe-port warranty, then it is a complete cause of action. *See The Caroline P* [1985] 1 WLR at 566 (explaining that, for "an action for damages for breach of contract (or warranty) … [t]he cause of action will date from the date of the breach."). It does not matter that Bunge cannot show damages yet. *See* Robert Bright et al., *Carver on Charterparties* §§ 11-386 to -388 (Howard Bennet ed., 2d ed. 2021) ("There is no need for the [breach-of-contract] claimant to prove that he has actually paid the third party or that there has even been a demand for payment from the third party."). Nor does it matter that the measure of damages is indemnity; that does not change the nature of the claim as one for breach of contract. *See id.* § 11-388 ("While the measure of damages for breach of contract in cases involving third party liabilities may amount to an 'indemnity' in respect of such liabilities, the claim nevertheless remains one for damages for breach of contract, rather than a claim on an express or implied contractual promise."). So this claim is a complete cause of action under English law. The claim is ready to be adjudicated, and Bunge has asserted it in arbitration. It is thus a valid prima facie admiralty claim.

## IV. THE $480,000 CLAIM DOES NOT SUPPORT ATTACHMENT

Bunge's loss-of-hire claim is different. It is not in the category of "ways in which a person, A, who has become liable to B may be able to obtain redress from C." *The Caroline P* [1985] 1 WLR at 566. Rather, Bunge wants this money from Tongli; and if it does not

get it from Tongli, it wants the money from ADM. This is an ordinary breach-of-contract claim, so it is complete on the date of the breach. *Cf. id.*; Bright et al. §§ 11-386 to -387.

Still, this is not a valid prima facie admiralty claim because it cannot be adjudicated yet. The claim is explicitly, deliberately contingent. Bunge's arbitration complaint says that Bunge "will maintain as against Tongli Shipping Pte Ltd that [these damages] are for the account of Tongli Shipping Pte Ltd." D.I. 39, Ex. 4 at 19. "However, *if* and to the extent that the said allegations as against Tongli Shipping Pte Ltd are not upheld … [Bunge] *will contend* that it is entitled to recover the same from [ADM]." D.I. 39, Ex. 4 at 19–20 (emphases added). If this kind of claim were enough to support Rule B attachment, then claimants could tie up defendants' property for years without ever pressing their claims. Such a rule would invite abuse of the attachment remedy.

Bunge objects that "[i]f these parties were before an admiralty court, their claims could have been consolidated into one action." Appellant's Br. 13. But Bunge never says that it was prevented from pressing its claim against ADM. To the contrary, Bunge's counsel admitted at oral argument that it had strategically decided to make this claim contingent. *See* Tr. 31:24–32:18 ("Well, of course, we're not going to say we're liable because if we say we're liable then that tags everybody down the line."). Bunge is the master of its complaint and chose to make this claim contingent on an outside event. It cannot attach ADM's property while it waits for its own condition to be triggered.

\* \* \* \* \*

Rule B attachment is a powerful tool. To limit its abuse, we require a valid prima facie admiralty claim—one that is ready to be adjudicated and has been asserted. Bunge's

11

$480,000 claim does not meet this requirement because Bunge has merely announced that it might assert it one day. So we agree with the District Court's analysis as to this claim. But Bunge's $7 million breach-of-contract claim suffices because it is a complete cause of action under English law and Bunge has asserted it in arbitration. We thus reverse the District Court's order.