John MONTEIRO, Libellant-Appellant,

v.

Sociedad Mar. SAN NICOLAS, S.A. and THE S.S. EURYVIADES, her engines, tackle, boilers and appurtenances, etc., Respondents-Appellees.

No. 152, Docket 24642.

United States Court of Appeals Second Circuit.

Argued Jan. 14, 15, 1958.

Decided April 14, 1958.

Lebovici & Safir, New York City (Isaac Salem, New York City, of counsel), for libellant-appellant.

Cardillo & Smith, New York City (Charles H. Bridge, Jr., New York City, of counsel), for respondent-appellee, Sociedad Maritima San Nicolas, S.A.

Before MEDINA and MOORE, Circuit Judges, and GALSTON, District Judge.

MEDINA, Circuit Judge.

This is an appeal from an order of the District Court quashing the service of process and dismissing the libel. The substance of the libel, not in any way involved on this appeal, states a claim for wages allegedly due libellant, a non-resident seaman, for work he performed aboard the S.S. Euryviades, a tramp freighter flying the Liberian flag and owned by respondent, a Panamanian corporation. On this appeal libellant contends that P. D. Marchessini & Co. (New York) Inc., a New York corporation on which process in the case at bar was served, was a managing or general agent of respondent, and that respondent, acting through this alleged agent, was doing sufficient business in the Southern District of New York to be "present" in that district and thus within the jurisdiction of the court below.

Respondent, "appearing specially" in the District Court to contest the jurisdiction of that court, submitted two affidavits, one by Paul A. Ganteaume, the treasurer of the Marchessini corporation, and the other by Panaghi D. Marchessini, the principal stockholder of the Marchessini corporation and the owner of the controlling interest in respondent, in support of its motion to quash the service and dismiss the libel. From these affidavits the following facts appear: the Marchessini corporation is a shipping agency incorporated in 1954 which, upon

the request of foreign shipowners, represents their vessels while they are in the port of New York, arranges such things as provisioning, customs clearance, occasional repairs, and advises the vessels' masters concerning the signing on and off of personnel and regarding immigration formalities. Similarly, upon the request of foreign shipowners, the Marchessini corporation at times appoints shipping agents for vessels which call at United States ports other than New York, and also signs specific charter agreements as agent for signing in behalf of a shipowner after the owner has concluded the agreement through the agency of some New York broker.

The S.S. Euryviades, the ship on which libellant was employed, sails on no regular line, but rather makes calls "according to where she may be chartered." She is the only vessel owned outright by the respondent and the headquarters for her operation is in London. The Master's portage statements regarding his expenditures, the reports and records of classification surveys and overhauls, and the majority of the vessel's freights are sent to these London headquarters.

. Although the S.S. Euryviades has not called at the port of New York since 1949, the Marchessini corporation is appointed by respondent to handle business in New York when any arises. In January and July, 1956, the Marchessini corporation signed charter agreements in New York for the S.S. Euryviades as agents of the owner and collected the freights payable thereon in New York. These payments were remitted to respondent. During 1955 and 1956 the vessel made three calls in the United States and on two of these occasions the Marchessini corporation named the vessel's port agent.

In addition, the affidavit of Ganteaume contains the conclusory assertion that the Marchessini corporation is not the managing or general agent for respondent; but this statement is contradicted in the affidavit of libellant's attorney, submitted in opposition to respondent's motion.

Nevertheless, apparently on the sole basis of the affidavits submitted in respondent's behalf, the court below held that, because the S.S. Euryviades had not called at the port of New York for approximately six years and because of the isolated and sporadic nature of the services performed by the Marchessini corporation for respondent in signing two charter parties and nominating agents, respondent was not jurisdictionally present in the Southern District of New York. This, we think, was error, because of the failure to consider the contents of the affidavit submitted in opposition to respondent's motion, which, in our opinion, requires a hearing to determine the validity of the service.

The affidavit of libellant's attorney incorporates a deposition of Panaghi D. Marchessini, owner of the controlling interest in respondent, which was read into the record in a prior case instituted by a seaman against the same respondent as is involved in the case at bar. From this deposition it appears that:

As of October 13, 1955, the date the deposition was taken, Petmar Agencies, Inc., a shipping agency the principal stock in which was owned by Panaghi D. Marchessini, was acting "continuously" as the agent of respondent, as well as at least four other corporations in which Panaghi D. Marchessini had an interest. The deponent listed among Petmar's duties as agent: the finding of employment for the ships in the United States, collecting freights, paying disbursements, and performing "any services required when the ship is here or any services an agent can bring when the ship is not here." Panaghi D. Marchessini answered "definitely" when asked "would you say that whenever the Euryviades was in any port of the United States that Petmar would have the exclusive operation and management of the vessel?" With regard to the relationship between Petmar and the Marchessini corporation, deponent stated that "P. D. Marchessini & Co., Inc. is taking over the continuation of Petmar business," and agreed that Marchessini would

then become an agent "exactly as Petmar Agency was before." Panaghi D. Marchessini also stated " \* \* \* the movements and the employments of the ship (including the S.S. Euryviades) are either decided in London by P. D. Marchessini, London, or in the United States by Petmar and/or P. D. Marchessini, New York, according to where the ship is and where the employment is."

These statements contained in the affidavit submitted in libellant's behalf stand substantially uncontradicted, except for the single conclusory statement that the Marchessini corporation is not general or managing agent of respondent, and they are to some extent supported by Panaghi D. Marchessini's affidavit, submitted in the case at bar, which states that the Marchessini corporation "is appointed by respondent to handle business in New York when any arises."

Certainly, the affidavit of libellant's attorney is strongly persuasive of the inference that the Marchessini corporation was a general or managing agent of respondent, and that, especially in view of the control of shipping by Petmar and the Marchessini corporation from New York, respondent was present in the Southern District of New York. See Arpad Szabo v. Smedvig Tankrederi A.S., D.C.S.D.N.Y., 95 F.Supp. 519. Indeed, in another case in which process was served on Petmar Agencies, Inc. as agent for the same respondent, the validity of the service was upheld, and, although respondent did not in that case contend that it was not jurisdictionally present, the court specifically, and necessarily, found that respondent was present in the Southern District of New York. Stefanakis v. Sociedad Maritima S. Nicolas, S.A., D.C.S.D.N.Y., 102 F.Supp. 544.

■ However, since it cannot be determined from the record in the case at bar whether the Marchessini corporation did in fact continue the business activities of Petmar Agencies, Inc., after 1955 and, if so, the extent to which the Marchessini corporation acted as agent for respondent, a hearing is necessary to determine the validity of the service. This hearing should be held before the District Court and not before a Commissioner. See United States v. Kirkpatrick, 3 Cir., 186 F.2d 393; Newman & Bisco v. Realty Associates Securities Corp., 2 Cir., 173 F.2d 609, 611; Prudence-Bonds Corp. v. Prudence Realization Corp., 2 Cir., 174 F.2d 288, 289; also De La Rama S.S. Co. v. United States, 2 Cir., 206 F.2d 651, 657; Harris v. The Cecil N. Bean, 2 Cir., 197 F.2d 919, 922; Howes Leather Co. v. La Buy, 7 Cir., 226 F.2d 703, 708–709, affirmed 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290.

■ Prior to the decision below dismissing the libel, libellant had served the Marchessini corporation with process *in personam* with a clause of foreign attachment which directed that the garnishee, the Marchessini corporation, appear on a certain day to answer interrogatories, regarding property of respondent in its hands, propounded by libellant. The Marchessini corporation did not appear, but rather filed a verified answer denying that it had in its possession property belonging to respondent. Libellant raised no objection to this answer in the court below, but, on this appeal, argues that the dismissal of the libel was error as it deprived him of the alleged right to question officers of the Marchessini corporation about respondent's property. In view of our reversal of the order quashing the service of process and dismissing the libel, we find it unnecessary to pass on this contention. Since questions regarding property of respondent held by the Marchessini corporation are necessarily closely related to those regarding that corporation's representation of respondent as its agent and the presence of respondent in the Southern District of New York, the information desired by libellant can be obtained at the hearing before the district court, upon remand of the case, to determine the validity of the service of process.

Reversed and remanded.