UNITED STATES of America and Industria E Comercio De Minerios S.A., Libellants,

v.

CIA. NAVIERA CONTINENTAL S.A., Respondent.

United States District Court
S. D. New York.

Oct. 31, 1959.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, George B. Warburton, New York City, of counsel, for libellant, Industria E Comercio De Minerios S.A.

Nelson, Healy, Baillie & Burke, Nicholas J. Healy, 3rd, New York City, for respondent.

WEINFELD, District Judge.

The respondent, a Panamanian corporation, sometimes hereafter referred to as Continental, moves to dismiss the libel and to vacate an attachment of its vessel on two grounds: (1) that respondent could have been "found" within this district, and therefore there was no basis for a foreign attachment under Rule 2 of the Admiralty Rules, promulgated by the Supreme Court; and (2) that the libel, pursuant to which the attachment was made, was time-barred on its face.

The controversy centers about a shipment of manganese ore from Brazil to the United States which was being transported by respondent for libellant under a contract of affreightment between them. The vessel sank en route and libellant's entire cargo was lost.

The libel contains two separate causes of action, one seeking to compel arbitration, and another charging that the loss of the cargo was due to unseaworthiness of the vessel, in breach of the contract and charter party. The libel prays that in the event the respondent be not found within this district for the purpose of effecting service of process, a writ of foreign attachment issue against respondent's vessel, the S.S. Transcape, which was expected to arrive within the jurisdiction. She arrived in due course and was attached.

Libellant, Industria E Comercio De Minerios S.A., a Brazilian corporation, was under contract to the Government of the United States to sell, ship and transport manganese ore to ports in the United States. Thereafter, and to effect its obligation to ship the iron ore here, the libellant entered into a separate agreement with the respondent for the car-

riage of the ore in monthly shipments covering the year 1958. The agreement of affreightment specified the form of charter party which was to be executed in connection with each voyage. The agreement and the charter party covering the January 1958 shipment were not signed by the principals, the libellant and respondent herein. They were signed on behalf of the libellant by an agent and on behalf of the respondent by Ocean Shipping and Trading Corporation "As Agents", hereafter referred to as "Ocean". The charter party for the ill-fated voyage which gives rise to this libel covered the February 1958 shipment. This too was signed by Ocean Shipping and Trading Corporation "As Agents".[1] The various documents signed by Ocean "As Agents" were executed by Ocean's officers at New York City where Ocean maintains offices at 30 Broad Street.

■■ Rule 2 of the Admiralty Rules authorizes attachment in suits in personam "if * * * respondent shall not be found within the district". An attachment under the Rule, generally referred to as a foreign attachment, has a twofold purpose: (1) to obtain jurisdiction of the respondent in personam through his property; and (2) to assure satisfaction of any decree in libellant's favor.[2] It may issue against the property of resident, as well as nonresident, respondents.[3] However, it "may be utilized only when a respondent is not found within the jurisdiction."[4] Thus, on motions to vacate foreign attachments the essential issue is whether the respondent could have been found within the district.

■ The Rule does not define "found". The term has a different significance depending upon whether the respondent is a resident or nonresident. In the case of a foreign respondent, such as we deal with here, whether or not it can be found within the district presents a two-pronged inquiry: first, whether it can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process.

■ The first inquiry is directed to whether or not the respondent is present within the district by reason of activities on its behalf by authorized agents so as to subject it to this Court's jurisdiction in in personam proceedings.[5] If not, then the respondent cannot be found within the district and this ground alone would be sufficient to support the attachment.[6]

■ On the other hand, even if the foreign respondent be found within the district in a jurisdictional sense, its prop-

1. This particular charter party describes Ocean Shipping and Trading Corporation "As Agents for owners of the * * * Vessel called the 'S.S. Bonitas'". Actually, the respondent was not the owner of the Bonitas but had chartered it from another owner in order to fulfill its obligations under its agreement with libellant.

2. 2 Benedict, Admiralty, § 288 at 346 (6th ed. 1940); Swift & Company Packers v. Compania Columbiana Del Caribe, S.A., 1950, 339 U.S. 684, 70 S.Ct. 831, 94 L. Ed. 1203. In the latter case it is stated that the first purpose is "to secure a respondent's appearance * * *." Id., 336 U.S. at page 693, 70 S.Ct. at page 867. However, if a respondent fails to appear, jurisdiction would nonetheless exist to the extent of the property attached.

3. Atkins v. Fibre Disintegrating Co., 1873, 18 Wall. 272, 85 U.S. 272, 21 L.Ed. 841;

2 Benedict, Admiralty, § 288 at 346-47 (6th ed. 1940).

4. Swift & Company Packers v. Compania Columbiana Del Caribe, S.A., 1950, 339 U.S. 684, 693, 70 S.Ct. 861, 867.

5. See International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Szabo v. Smedvig Tankrederi A.S., D.C.S.D.N.Y.1951, 95 F.Supp. 519; Federazione Italiana Dei Consorzi Agrari v. Mandask Compania D.V., D.C. S.D.N.Y.1957, 158 F.Supp. 107.

6. It is for this reason that we find reported cases in which respondents in attachment proceedings argue in reverse of the contention usually made when resisting jurisdiction. See comment by Judge Bryan in Federazione Italiana Dei Consorzi Agrari v. Mandask Compania D.V., D.C. S.D.N.Y.1957, 158 F.Supp. 107, 111.

erty is not immunized from attachment. The second question, (the only one arising in the instance of a resident respondent), then presents itself. Could the respondent be found within the district with due diligence for service in the libel proceeding? Specifically, in the instance of this respondent, was there "an officer, a managing or general agent" or other responsible representative who could be found and upon whom such service could be effected?[7] Against this background, we proceed to consider the two questions in relation to this respondent.

The substance of respondent's position in support of its motion to lift the attachment is that (1) Ocean's activities on its behalf manifest respondent's presence and establish that it was doing business within the district; and (2) Ocean was a managing agent of respondent who could readily have been found for service of the citation.

■ On the first issue, libellant urges that the respondent maintains its principal place of business in Panama, where it is incorporated; that it neither maintained nor shared offices with Ocean at 30 Broad Street, New York City, nor at any other place within the district; that Continental was not listed on the door of Ocean's office or on the building directory; neither was it listed in the New York City telephone directory. However, these factors, in and of themselves, are not necessarily controlling.[8] Each case must be governed by its own facts, depending upon the amount and nature of activities within the forum and whether it would be reasonable and just to call upon the foreign corporation to respond to the suit.[9]

■ Continental, countering libellant's contention, presents an affidavit of one of its officers (also an officer of Ocean) who categorically swears that since its formation in 1955, Continental has been, and still is, carrying on business here through Ocean as agent. This self-serving and conclusory statement must be evaluated against the actual facts. Various activities and details are enumerated by respondent to support its position. First, there is the fact, already

---

7. Rule 1 of the Admiralty Rules simply provides, as far as service is concerned: "* * * All process shall be served by the marshal or by his deputy * * *." It does not specify upon whom such service shall be made, but it is clear that in any event it must be made upon an agent or other responsible representative of respondent so that notice of the suit is reasonably calculated to be given to the respondent. While the Federal Rules of Civil Procedure are said not to apply to proceedings in admiralty, as to service, they are substantially the same as the admiralty practice. Ashcraft-Wilkinson Co. v. Compania De Navegacion Geamar, S.R.L., D.C.S.D.N.Y.1953, 117 F.Supp. 162, 164; Patel Cotton Co. v. Steel Traveler, D.C.S.D.N.Y.1952, 107 F. Supp. 191, 193; 2 Benedict, Admiralty, § 280 at 336 (6th ed. 1940). Cf. Monteiro v. San Nicolas, S.A., 2 Cir., 1958, 254 F.2d 514, 517.

Originally district courts could not issue process for service beyond the limits of the district. Robertson v. Railroad Labor Board, 1925, 268 U.S. 619, 45 S. Ct. 621, 69 L.Ed. 1119. Rule 4(f) of the Federal Rules of Civil Procedure changed the law to the extent of permitting service "anywhere within the territorial limits of the state in which the district court is held." Hence, a question may arise whether once a respondent is found within the district where the action is pending in a jurisdictional sense, it may also be found therein for process purposes if with due diligence it can be served in another district within the state as permitted by Rule 4(f). Courts of admiralty have not been hesitant to overcome procedural hurdles in order to achieve substantial justice. Cf. E. J. Dupont De Nemours & Co. v. Vance, 1856, 19 How. 162, 60 U.S. 162; Dowling v. Isthmian S.S. Corp., 3 Cir., 1950, 184 F.2d 758. However, the conjectured issue does not arise herein since Ocean maintains its offices within the district where the action is pending.

8. Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485.

9. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95; Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 445, 72 S.Ct. 413.

alluded to, that the contract of affreightment and the charter party upon which the libel is based, were signed in this district by Ocean "As Agents" on behalf of respondent. Then there is the execution of a number of other charter parties by Ocean "As Agents" for Continental as owner of vessels; further, Ocean's acting for Continental with respect to conversion, repairs, contract and credit arrangements covering Continental's vessels. With respect to such vessels, when berthed in this district (although libellant disputes the number of occasions), Ocean hires and pays the crews, arranges for repairs, provisions, supplies, towage, pilotage, dry-docking and stevedoring and, in general, renders husbandry services.[10] Continental maintains two bank accounts, each with substantial deposits, in two separate banks located in New York City. These various activities and circumstances, some of which were known to libellant, its agent and attorneys, appear to have been performed on a continuous and systematic basis. Taken in totality, they are sufficient to establish that Continental, through Ocean's activities on its behalf, was present within this district and subject to the Court's jurisdiction.[11] Thus, the first inquiry must be answered in respondent's favor.

There remains, however, the second question—whether respondent could have been found within the district for process purposes. The precise question is whether "an officer, a managing or general agent" or other responsible representative of respondent could have been found in the district by the Marshal with rea-

sonable diligence for service of process on respondent.

Here, the respondent urges that officers of Ocean are also its officers; that three directors of Ocean are also its directors; and that any one of them was readily available for service of process at Ocean's offices. Libellant contends that its proctors and representatives were without knowledge as to the identity of Continental's officers—that they knew only Ocean and its officials—and emphasizes that Continental was not listed at 30 Broad Street, where Ocean made its headquarters.

We may accept as fact that libellant's proctors did not know that Ocean's officers were also Continental's, but this does not compel a finding that respondent could not be found for service of the citation. Service upon a corporation is not limited to its officers. It may also be made upon a managing or general agent. The respondent claims that the facts establish that Ocean, by reason of its activities, was a managing agent for it and that since process could have been served upon Ocean through its officers, who were readily available, it follows that respondent could have been found within the district for process purposes and that accordingly there was no basis for the attachment.[12]

The same facts are advanced in part by respondent to establish that Ocean was, and that libellant knew that Ocean was, a managing agent for it. The contract of affreightment and the charter party do not mention Continental by name. While the exact date is questioned as to when libellant, its agent (who signed on its

10. Respondent stresses that in three other litigations in which it was sued in this district, service of process was made upon it by serving Ocean, and that Continental appeared generally.

11. Stating it conversely, were this a motion by respondent, upon substantially the same state of facts, to set aside service of process on the ground of lack of jurisdiction over its person, the Court would be required to hold that Ocean's activities subjected Continental to jurisdiction and that the demands of due process would be satisfied by service upon Ocean, even

though respondent had not consented that it be sued here, nor authorized Ocean to accept service. See International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95; Monteiro v. San Nicolas, S.A., 2 Cir., 1958, 254 F.2d 514, 517; Szabo v. Smedvig Tankrederi A.S., D.C.S.D.N.Y.1951, 95 F.Supp. 519.

12. See Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; Krauss v. Erie R. Co., D.C.S.D.N.Y.1954, 16 F.R.D. 126.

behalf) and its proctors first learned that Ocean, in executing the documents "As Agents" was acting for Continental, there can be no doubt that they were aware of this in June 1958—more than fifteen months before the filing of the libel herein. This information was conveyed orally and in an affidavit signed by Ocean's President at the request of libellant's proctors wherein he stated, "On August 7, 1957 my company [Ocean] served as agent in New York for [Continental] which company was the owner of certain ocean vessels."

The execution in this district by Ocean of the documents, upon which libellant relies to impose liability upon Continental, plus Ocean's other continuous and regular activities here on behalf of Continental, are sufficient to establish that it was a managing agent for respondent and that service could be effected upon it on the latter's behalf.

The question remains whether any of Ocean's officers were available for service. It is of no significance that libellant or its proctors did not know particular officers of Ocean. It is of significance that they knew Ocean was agent for Continental and acting for it; they knew at least one of Ocean's officers and the identity of others, if not known, was easily ascertainable.[13] Ocean could have been served in its capacity as a managing agent of respondent upon delivery to any one of its officers of the citation, at Ocean's office within the district. The Marshal was not directed there; he made no independent inquiry whether Ocean, through any of its officers, could be found for service. Libellant's proctors simply relied upon their position that Continental was not engaged in business in this district and hence could not be found here. Had the Marshal been directed to serve process upon Ocean, there appears to be no question but that it, through its officers, was readily available for such purpose and hence could have been found within the district.

It is understandable that libellant's proctors, in their efforts to protect their client's interests, preferred to attach the vessel and thus to obtain security for any award. But a foreign attachment may issue only under the conditions prescribed in Rule 2.

The Court in reaching its conclusion that the respondent, by reason of the activities of Ocean, has been and is doing business within the district, has relied in part upon the sworn statements of its officers to that effect. Accordingly, the motion to vacate the attachment is granted only upon condition that the order to be entered hereon contain a provision that respondent appear generally and raise no issue as to jurisdiction or service.

The foregoing disposition makes it unnecessary to consider respondent's alternative ground for vacating the attachment.

Settle order on one (1) day's notice.

---

13. Either from the New York County Clerk or from credit agencies which furnish such information upon request.