NAVIEROS INTER–AMERICANOS, S.A., INC., Plaintiff,

v.

M/V "VASILIA EXPRESS", her engines, machinery, tackle, apparel, etc., in rem; Royal United Shipping, Inc., in personam, and Vasilia, Inc., in personam, Defendants.

Transcaribbean Maritime Corp.; Gulf Coast Bank and Trust Company, and Comet Lines Agency, Inc., Intervening Plaintiffs.

Civil No. 96–1479 (JAF).

United States District Court, D. Puerto Rico.

June 7, 1996.

---

Luis N. Saldaña–Roman, William Graffam, Jimenez Graffam & Lausell, San Juan, PR, for Plaintiff.

Jose F. Sarraga, San Juan, PR, for Comet and Transcaribbean.

Carlos J. Quilichini, San Juan, PR, for Gulf Coast Bank.

Juan A. Lopez–Conway, Calvesbert & Brown, San Juan, PR, for The Vasilia Defendants.

John F. Nevares, Smith & Nevares, San Juan, PR, for Royal United Shipping.

## MEMORANDUM OPINION AND ORDER

FUSTE, District Judge.

This is an admiralty and maritime action under 28 U.S.C. § 1333 and Fed.R.Civ.P. 9(h). The case was tried before the court on May 23, 24, and 29, 1996. This memorandum opinion contains the findings of fact and relevant conclusions of law. Fed.R.Civ.P. 52.

Before trial, on April 30, 1996, the court held a post-arrest hearing over the seizure of the M/V "VASILIA EXPRESS", defendant *in rem*, and entertained other issues regarding the pending claims. *See Docket Document Nos. 11 & 15.* The release bond was set at $200,000, by surety or otherwise, and the court agreed to accept a letter of undertaking from Assuranceforeningen Skuld, the vessel's protecting and indemnity underwriter, in lieu of a bond. As of this date, no bond or letter of undertaking has been posted.

During the April 30, 1996, hearing, the court ordered the parties to meet and agree on an accelerated discovery schedule with notice to the court before May 8, and setting May 15 as the discovery completion date. The parties filed a stipulated discovery schedule as ordered. *See Docket Document No. 23.* The pretrial conference was originally set for May 21, 1996, and trial was scheduled to commence on May 23, 1996.

The accelerated schedule obeyed to the fact that the M/V "VASILIA EXPRESS", with a fair market value estimated at $500,-000, was accruing significant expenditures incidental to the arrest, with liens or potential liens exceeding its fair market value. *See* Second Amended Complaint and Intervening Complaints, *Docket Document Nos. 17, 40, 41 & 49; see also* Condition and Evaluation Survey dated April 23, 1996, subscribed by Capt. Paul W. Simpson, forming part of *Docket Document No. 32.* The owner's inability to post bond was also a motivating factor in advancing, for the owner's benefit, the trial date, so that an early disposition of the claims could be made without further prejudice of loss to the vessel and its owner.

On May 20, 1996, a second status conference was held. *See Docket Document No. 38.* The defendants *in personam*, Vasilia, Inc. and Royal United Shipping, Inc., were given one last opportunity to comply with outstanding discovery which they had failed to provide, in violation of the stipulated discovery schedule. To that effect, the discovery deadline was extended until May 22, 1996, and the *in personam* defendants were advised that failure to comply would result in the striking of the defendants' affirmative defenses. The pretrial conference was rescheduled for May 22, 1996. *Id.*

On May 23, 1996, trial commenced, after the court ascertained that Michael Psarellis, a principal related to both *in personam* defendant corporations, failed to appear for deposition in San Juan, Puerto Rico, as agreed, along with a corporate representative of Vasilia, Inc., who was to produce documents. Defendants' affirmative defenses were ordered stricken.

The record reflects that the only claim of ownership was entered by Vasilia, Inc., *see* Restricted Claim of Ownership, *Docket Document No. 7.* Royal United Shipping, Inc., claimed to have no proprietary interest in the M/V "VASILIA EXPRESS". *See* Declaration of Vasilia Psarellis, forming part of *Docket Document No. 29.*

Due to the ongoing dispute surrounding the validity of the arrest of the M/V "VASILIA EXPRESS" by plaintiff, Navieros Inter–Americanos S.A., Inc., under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, the court authorized a foreign attachment or maritime attachment over the vessel pursuant to Rule B of the same body of rules.

The case was actually tried on plaintiff's second amended verified complaint under Rules B and C, and *in personam* against Vasilia, Inc. and Royal United Shipping, Inc.

*See Docket Document No. 17.* Just before trial, Vasilia, Inc. amended its answer to said second amended complaint, and withdrew its counterclaim, admitting the essential facts of the second amended complaint. Transcaribbean Maritime Corp., a San Juan-based ship's agent and stevedoring contractor, was allowed to intervene. Said entity paid, on behalf of the vessel, harbor and port dues, pilot fees, and other expenditures incidental to the ship's arrival and subsequent detention in the port of San Juan, Puerto Rico. Transcaribbean is not a general agent for Vasilia, Inc. or the M/V "VASILIA EXPRESS". Its services were retained for the only southbound trip that the vessel made to San Juan en route to Venezuela. The court also allowed the intervention of the vessel's first preferred mortgagee, Gulf Coast Bank and Trust Company, of New Orleans, Louisiana, and Comet Lines Agency, Inc., the ship's other charterer.

On the basis of the evidence received, the court enters its findings of fact and conclusions of law.

## I.

### *Facts*

In the morning hours of March 28, 1996, Navieros Inter-Americanos S.A., Inc., a Florida corporation with a principal place of business in the state of Florida, culminated ongoing negotiations and fixed a time-charter party agreement in the New York Produce Exchange Government Form of October 3, 1946, through a ship's broker, Jan Gisholt Shipping, Inc., of Miami Lakes, Florida. The chartered vessel, the M/V "VASILIA EXPRESS", was said to be owned by Royal United Shipping, Inc., and was registered in St. Vincent, The Grenadines, The West Indies. The vessel was chartered for two round trips of nine days each, Florida–Guatemala–Florida, with an option for a third trip, for a total chartering engagement of about twenty-seven days. Charter hire was stipulated at $2,300 per day. The evidence subsequently confirmed that the vessel owner is Vasilia, Inc., a Liberian corporation, and that Royal United Shipping, Inc. is a Delaware corporation closely held and operated by the same principals behind Vasilia, Inc.

These principals are Vasilia, Steven, and Michael Psarellis, residents of Louisiana.

The charter party agreement stated that the vessel was to be formally delivered to the charterer, Navieros Inter–Americanos S.A., Inc., upon its arrival at the pilot station in Port Everglades, any time of day or night after the fixing of the charter on March 28, 1996.

On March 28, 1996, at 2:00 P.M., Mr. Kenneth J. Coleman, President of Navieros Inter–Americanos, boarded the vessel at a pier located in the vicinity of 3701 NW, South River Drive, in Miami, Florida, a location close to Port Everglades, and discussed with the master of the vessel the stowage plan that would be followed for the initial loading of the vessel upon its arrival at Port Everglades that same day. Michael Psarellis was the person in charge of the ship's operation. Mr. Psarellis was present at the time of Mr. Coleman's boarding. Although the vessel was to be technically delivered at the pilot station in Port Everglades, a location less than thirty nautical miles away, due to the proximity of the locations, the master and Mr. Psarellis accepted Mr. Kenneth Coleman's instructions to proceed further to Port Everglades and, with a pilot, to berth at Pier 19 in Port Everglades for loading. The vessel was, for all purposes, delivered to the charterer when Mr. Psarellis and the ship's master accepted Mr. Coleman's verbal instructions to proceed under the charter party agreement to Pier 19 at Port Everglades for loading. For all purposes, the charter party was orally modified and the ship was delivered to the charterer a few hours earlier than originally agreed. The oral modification confirmed by the evidence is valid and enforceable.

Following Mr. Coleman's instructions, the M/V "VASILIA EXPRESS" left its Miami berth on March 29, 1996, and proceeded to Port Everglades. The ship's departure was notified to Mr. Coleman by the ship's agent in the port of Miami, and through a telephone call made by BJ Towing Company, Inc., confirming that the ship had been brought out to the end of the Miami River.

On March 29, 1996, at about 5:00 P.M., a Mr. Watkins, from BJ Towing, advised Mr. Coleman that, while en route to Port Everglades, the M/V "VASILIA EXPRESS" experienced problems with its bridge tachometer and that the vessel had stopped for repairs.

On Saturday, March 30, 1996, Mr. Kenneth J. Coleman asked his brother, Captain William J. Coleman, to visit the vessel and assess the situation. The Colemans visited the ship on four other occasions until April 5, 1996, assisting Michael and Steven Psarellis in the matter of the ship's breakdown so that the vessel could finally complete the short run to Port Everglades in order to load. In anticipation of what appeared to be an imminent firm vessel arrival at Port Everglades, Navieros Inter–Americanos ordered fuel for the vessel and issued the necessary check in payment of United States Customs dues. This was accomplished by the 28th and 29th of March, 1996. In a document dated March 27, 1996, Navieros Inter–Americanos requested berthing for the M/V "VASILIA EXPRESS" at Port Everglades, advising the harbor master that the ship's original estimated date of arrival at said port was on or about March 28.

Even though the M/V "VASILIA EXPRESS" had been chartered to Navieros Inter–Americanos by Royal United Shipping, Inc., as owner, Michael and Steven Psarellis, principals or officers of Royal United and Vasilia, Inc., deviated the vessel towards the Caribbean and formulated other plans for the vessel. The shipowner breached the charter party by entering into a second time-charter party agreement with intervening plaintiff, Comet Lines Agency, Inc., for a higher charter hire. Comet Lines was not privy to the vessel's prior engagement and innocently directed the vessel to proceed with cargo to San Juan, Puerto Rico, where it would unload and later depart for Puerto Cabello, Venezuela.

Upon the ship's arrival at the port of San Juan, Puerto Rico, on April 12, 1996, the United States Coast Guard detained the vessel for violations to SOLAS 1974, the International Convention for the Safety of Life at Sea, as amended. A listing of deficiencies was prepared by the Coast Guard and the ship was ordered not to proceed to sea without the approval of the captain of the port, Capt. R.G. Ross, U.S. Coast Guard, San Juan, Puerto Rico. *See Docket Document No. 32, Exhibit B.*

On April 18, 1996, and while the vessel was detained under the authority of the U.S. Coast Guard, Navieros Inter–Americanos found out that the M/V "VASILIA EXPRESS" was in San Juan, Puerto Rico, and proceeded to its arrest under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. The vessel was seized by the United States Marshals Service on April 19, 1996.

As of this date, the vessel is still detained at the port of San Juan, Puerto Rico, by virtue of the U.S. Coast Guard prohibition for the cited safety violations. In addition, the vessel is subject to Navieros Inter–Americanos' Rule C action *in rem* and the Rule B maritime attachment. The vessel is also subject to Transcaribbean Maritime Corp. and Comet Lines Agency, Inc.'s intervening Rule C arrest and by Gulf Coast Bank and Trust Company's intervening action for execution of the preferred mortgage lien over the vessel.

The evidence shows that intervening plaintiff, Comet Lines Agency, Inc., entered into a second time-charter agreement with the owners of the M/V "VASILIA EXPRESS", also believing that Royal United Shipping, Inc. was its rightful owner. The time-charter agreement was fixed through a broker, Americana Marine Services, Inc., starting on April 4, 1996, for a period of thirty days, with a thirty-day extension, at the charter hire rate of $2,630 daily, for trade between San Juan, Puerto Rico, and Venezuela, South America, carrying trailers and/or containers and some breakbulk cargo. Comet Lines advanced fifteen days of charter hire from April 4 through April 19, 1996, in the amount of $39,450, which monies were wire transferred to Royal United Shipping, Inc., in New Orleans, Louisiana.

As stated before, the record confirms that, even though Royal United Shipping, Inc., appears as time charterer on both time-char-

ter party agreements, the vessel is registered as a Liberian-flag vessel in the name of Vasilia, Inc. Vasilia, Inc. and Royal United Shipping, Inc., are corporations under the exclusive management and control of Vasilia, Michael, and Steven Psarellis. For purposes of this suit, both corporations are treated as owners of the M/V "VASILIA EXPRESS". First, Vasilia, Inc. is the registered owner; second, Royal United Shipping, Inc., a company related to Vasilia, Inc., represented to be the vessel's owner and, through it, the double charter was entered into. Both entities are liable for the contractual breach of the charter-party agreements and the resulting damages to Navieros Inter–Americanos and Comet Lines.

The testimony received at trial also establishes that Navieros Inter–Americanos is a small steamship company operating a regular liner service on a weekly basis, serving ports in Florida and Guatemala. Navieros Inter–Americanos averages fifty voyages per year and has the capacity to book cargo generating approximately $210,000 gross freight per voyage, round trip. In the year 1995, Navieros Inter–Americanos had gross freight sales of about $8 Million.

As a result of the breach of the charter party entered into by Vasilia, Inc. and/or Royal United Shipping, Inc. with Navieros Inter–Americanos, Navieros Inter–Americanos suffered damages as follows:

**Gross Loss of Revenue** (composed of the following elements of damage):

(1) Plaintiff's Exhibit 2, gross freight in the amount of $67,-000, returned to shippers upon demand;    $ 67,000

(2) Plaintiff's Exhibit 3, canceled bills of lading issued in Guatemala, representing $118,000 of freight charges for three voyages;    118,000

(3) Plaintiff's Exhibit 4, freight charges on southbound cargo received in Port Everglades, eventually returned to shippers;    71,175

(4) Plaintiff's Exhibit 5, net loss of $3,377 over $26,000 worth of freight rerouted through another steamship line providing service to Guatemala.    3,377

| Gross Loss: | | $259,552 |
|---|---|---|
| Less charter hire expense: | $ 57,600 | |
| Less fuel expense: | 19,000 | − 76,600 |
| Net Loss: | | $182,952 |

The evidence confirms that upon the breach of the time-charter party by the owners of the M/V "VASILIA EXPRESS", Navieros Inter–Americanos attempted to obtain a substitute vessel. The results proved to be fruitless and no vessel similar to the M/V "VASILIA EXPRESS" was available for hire to transport the cargo which motivated the loss of revenue discussed above.

The court also finds that the difficulties which Navieros Inter–Americanos previously had with the operation of the M/V "PHOENIX SPIRIT", during January to March 1996, are not related to the loss object of this suit.

As a result of the breach of the charter party with Navieros Inter–Americanos, Comet Lines Agency, Inc., as the second charterer, has been deprived of the use of the M/V "VASILIA EXPRESS". Comet Lines Agency, Inc. also had difficulties obtaining the services of a substitute vessel, and could only charter the M/V "GRAN BETTINA" on a limited basis, with the consequent additional expenditures. In addition, the shipowner has not been able to correct the SOLAS safety violations found by the U.S. Coast Guard. By reason of the shipowner's breach and failure to release the vessel from arrest, attachment, and Coast Guard detention, Comet Lines Agency, Inc. has suffered damages as follows:

A. Unearned charter hire advanced for the period 4/5/96 to 4/18/96:    $ 39,450.00

B. Fuel cost paid to Tropic Oil Co.:    5,312.00

C. Stevedoring costs at port of origin in Florida:    4,500.00

D. Ship's agency fee, port of origin in Florida:    4,999.26

E. Fuel Survey paid to Atlantic Maritime Bureau:    400.00

F. Incidental expenses paid to Trans–Caribbean Maritime Corp.: $7,480.08

G. Inland freight transportation charges at port of origin in Florida: 2,190.00

H. Charter hire for substitute vessel, the M/V "GRAN BETTINA": 15,000.00

I. Other ship-related expenditures paid to Transcaribbean Maritime Corp.: 2,694.79

J. Fuel supplied by Transcaribbean Maritime Corp.: 7,326.00

K. Cost of shifting cargo to the M/V "GRAN BETTINA": 1,240.00

L. Movement of flat racks from the M/V "VASILIA EXPRESS" to the M/V "ALLISON", paid to Concepción Villegas, through Transcaribbean Maritime Corp.: 600.00

M. Earned freight charges by Comet, reimbursable to Productores de Gas Carbónico, S.A.: 9,120.00

TOTAL: $100,312.13

These categories of damages and the totals were announced as a stipulation of the parties.

The parties also stipulated that as of May 20, 1996, Transcaribbean Maritime Corp., as port agent for the M/V "VASILIA EXPRESS", had suffered damages in the amount of $24,777.26, plus a per-diem charge of $255 until relieved of its responsibilities towards the vessel. These charges are for miscellaneous items, such as pilots and shifting expenses, running lines expenses during shifting, towage expenses during shifting, crew repatriation charges, agency and bond fees, harbor dues and dockage fees, boarding officer expenses and miscellaneous expenses payable to the Puerto Rico Ports Authority.

The court further finds that the $300,000 first preferred mortgage over the M/V "VASILIA EXPRESS" payable to Gulf Coast Bank and Trust Company is in arrears. The principal due and owing as of May 22, 1996, is $278,249.10, with interest accrued in the amount of $6,165.07, and late charges of $1,014.74. The total amount due to Gulf Coast Bank as of May 22nd is $285,428.91, plus an interest per diem of $90.66 until paid.

While defendants seem to have little or no defense against the fact that the M/V "VASILIA EXPRESS" was improperly chartered to two different entities for the same period of time, the parties disagree as a matter of law on at least three important areas, including whether Navieros Inter–Americanos is entitled to an action *in rem* to enforce a maritime lien, whether a maritime attachment is a viable remedy, and the extent of Royal United Shipping, Inc.'s liability after it was established that Vasilia, Inc. is the legal owner of the vessel.

## II.

### *In Rem Liability*

The plaintiff, Navieros Inter–Americanos, argues that it had time-chartered the M/V "VASILIA EXPRESS" and that the shipowner breached the charter party agreement when it diverted the ship to the service of the second charterer, Comet Lines Agency, Inc. Navieros Inter–Americanos invokes the existence of a maritime lien arising out of the breach of the charter party against the vessel and claims to be entitled to invoke the *in rem* process under Rule C, Supplemental Rules for Certain Admiralty and Maritime Claims.

The shipowner disagrees, arguing that the charter party was executory at the time of the subsequent charter to Comet Lines and that no maritime lien exists.

Based on the findings of fact previously made, this court is convinced that the charter party with Navieros Inter–Americanos was validly fixed and the ship was for all purposes delivered to Navieros Inter–Americanos at the time that Mr. Kenneth Coleman boarded the same, discussed the loading plan with the master, and, without objection from the master or Michael Psarellis, the master accepted Coleman's instructions to proceed to a specific berth in Port Everglades to load. The evidence further confirms that the parties' actions were totally consistent with the

written charter party, naming the pilot station at Port Everglades as the place for delivery of the vessel. The location where Mr. Coleman boarded the vessel is less than thirty nautical miles from Port Everglades. More so, Michael Psarellis agreed to such minor modification in the charter party by consenting to deliver the vessel a few hours earlier than originally planned. Such modification did not require a written confirmation and the oral stipulation is valid and enforceable. *Central Marine v. Ocean Marine*, 1984 A.M.C. 1730, 673 F.2d 1326 (5th Cir.1982).

■ The record independently confirms that Navieros Inter–Americanos intended to take, and indeed took delivery of the vessel on the 28th of March. Navieros Inter–Americanos ordered fuel for the vessel and issued a check in payment of United States Customs dues, all during the 28th and 29th of March. In addition, Navieros Inter–Americanos took steps to secure the berthing facility at Port Everglades for the vessel, advising the harbor master that the ship's estimated date of arrival at Port Everglades was March 28. Under these circumstances, the charter party was executed, a maritime lien was created, and the vessel was legally seized *in rem* under Rule C. *See* Judge Charles Schwartz' excellent discussion on this subject in *E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia*, 673 F.Supp. 796 (E.D.La.1987) (citing Supreme Court and Circuit Court authority); *see also Anderson v. Bowring & Co.*, 197 F. 675 (N.D.Cal.1911) (if vessel charterer had the right to designate place of delivery, such option binds the charterer when it boards the vessel and without objection directs it to proceed).

### III.

#### *Maritime Attachment*

The Supplemental Rules for Certain Admiralty and Maritime Claims represent the survival of the *in rem*, quasi *in rem*, and limitation of liability practice rules after the procedural consolidation of civil and admiralty practice that took place in the year 1966. Accordingly, the ancient and unique procedure giving right to admiralty attachment

and garnishment is available through Supplemental Rule B.

In the present case, as a protective measure, Navieros Inter–Americanos sought and obtained an order for maritime attachment over the M/V "VASILIA EXPRESS" based on the premise that the Liberian corporation Vasilia, Inc., as registered owner, cannot be found within this district for jurisdictional purposes, and the defendant cannot be found within the district for service of process.

The defendant Vasilia, Inc. seems to concede that the Liberian corporation cannot be found within this district for jurisdictional purposes, but contends that the maritime attachment was wrongfully obtained, inasmuch as legal counsel for defendant were given *ad hoc* authority on April 26, 1996, to receive process related to this case before the maritime attachment was actually executed over the *res*. Vasilia, Inc. also alleges that Mr. Luis Negroni and his employer, intervening plaintiff Transcaribbean Maritime Corp., are agents for service of process for Vasilia, Inc. in Puerto Rico for purposes of this case since May 10, 1996.

■ Rule B authorizes attachment in suits *in personam* if the defendant shall not be found within the district. The maritime attachment has a two-fold purpose. First, to obtain jurisdiction over the defendant *in personam* through his property and, second, to assure satisfaction of judgment in plaintiff's favor up to the value of the property attached. Rule B does not define what is meant by "found within the district." In the case of a Liberian corporation not doing business within the district, as is the case here, whether or not it can be found within the district presents a two-pronged inquiry: First, whether it can be found within the district in terms of jurisdiction and, second, if so, whether it can be found for service of process. *See LaBanca v. Ostermunchner*, 664 F.2d 65 (5th Cir.1981); *Seawind Compañía, S.A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir.1963); 2 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 21–2 (2d ed.1994).

■ The shipowner cannot seriously contest that Vasilia, Inc., a Liberian corporation,

as registered owner of the M/V "VASILIA EXPRESS", is a foreign corporation with no presence in this district for purposes of jurisdiction. Therefore, if the shipowner is to prevail in its attack over the validity of the Rule B maritime attachment, it must prove that the corporation, Vasilia, Inc., could be found within the district for service of process. The answer to this question is found in Judge Weinfeld's opinion in *United States v. Cia. Naviera Continental,* 178 F.Supp. 561, 564 (S.D.N.Y.1959):

> Could the respondent be found within the district with due diligence for service in the libel proceeding? Specifically, in the instance of this respondent, was there an officer, a managing or general agent or other responsible representative who could be found and upon whom such service could be effected? Against this background, we proceed to consider the ... questions in relation to this respondent.

On this second prong of the test, the precise question is whether an officer, a managing or general agent, or other responsible representative of defendant could have been found in the district by the marshal for service of process on Vasilia, Inc. This court finds that the short answer to the question is no. Vasilia, Inc. has no corporate officer present in this district. The corporation has no management presence here. Transcaribbean Maritime Corp., as intervening plaintiff and the ship's port agent, cannot be unilaterally appointed by Vasilia, Inc. and be assigned the responsibilities of a general agency or other managerial or official corporate presence after the litigation was instituted, for the sole purpose of defeating the otherwise traditional remedy of maritime attachment under Rule B. The same applies to the post-litigation appointment of counsel for defendants as an agent for purposes of service of process. While such appointment facilitates litigation and empowers counsel to waive required notices or service, it cannot be said to impede a Rule B attachment over a foreign defendant with no formal corporate or official presence in this district. If Vasilia, Inc.'s maneuver of appointing agents for service of process after litigation has commenced has the intended effect of defeating Rule B remedies, then the maneuver has the unacceptable effect of defeating a traditional maritime remedy available not only in the United States of America, but on almost all other maritime jurisdictions in the world, to effectively deal with the problem of fixing responsibility against foreign shipowners with no presence at the place where the attachment is made. Endorsing Vasilia, Inc.'s theory is tantamount to granting a foreign defendant the power to effectively repeal the use of Rule B by simply resorting to the mechanism of appointing an adverse party or trial counsel as agent for purposes of service of process. The recognized purposes of the foreign attachment rule—(1) to obtain *in personam* jurisdiction up to the limit of the value of the *res;* and (2) to assure satisfaction of any decree in plaintiff's favor—cannot be thrown overboard on account of strategic appointments directed at defeating the necessity of the rule. *See, in general, Seawind Compañia, S.A.,* 320 F.2d at 581–82; *State of Oregon, State Highway Com'n v. Tug Go Getter,* 398 F.2d 873 (9th Cir.1968); *LaBanca v. Ostermunchner,* 664 F.2d 65 (5th Cir.1981); *United States v. Cia. Naviera Continental,* 178 F.Supp. 561 (S.D.N.Y.1959).

There is no question in the court's mind that the Psarellis family controls Vasilia, Inc., a Liberian corporation. *See* Declarations Under Penalty of Perjury submitted by Vasilia and Steven Psarellis, forming part of this record. Vasilia, Steven, and Michael Psarellis reside in the United States and, from Louisiana, they control Vasilia, Inc., the Liberian corporation, with principal place of business in Greece, and the M/V "VASILIA EXPRESS", registered in St. Vincent. All the actors behind Vasilia, Inc. and Royal United Shipping, Inc. are members of the Psarellis family. Steven and Michael Psarellis are also directors of Vasilia, Inc. The preferred mortgage documents so confirm.

Following the reasoning of Judge Charles L. Brieant in *Const. Exporting Enterprises v. Nikki Maritime Ltd.,* 558 F.Supp. 1372 (S.D.N.Y.1983), a foreign corporation cannot blow hot and cold with respect to litigation. Having exercised the choice of incorporating Vasilia, Inc. as a Liberian corporation, with a principal place of business in Piraeus,

Greece, for the apparent purpose of distancing the corporation from the reach of the jurisdiction of the United States, its principals cannot claim presence in this district by having counsel make a general appearance in this case and, afterwards, grant them the power to serve as agent for purposes of service of process to defeat Rule B practice. The same applies to Vasilia, Inc. or Royal United Shipping, Inc.'s unilateral appointment of an employee of Transcaribbean Maritime Corp. to serve as general agent for the same purpose.

■ Lastly, one finds confirmation of these principles in the general theory of service of process upon corporations under Fed.R.Civ.P. 4(h), formerly Rule 4(d)(3). *See* 4A Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE §§ 1102–1103 (2d ed.1987). The rationale behind service upon an officer, corporate general or managing agent of a corporation is necessarily linked to the corporation's presence doing business in a given jurisdiction and not on the physical presence of an individual with apparent authority within the jurisdiction. Service of process will not be effective to establish jurisdiction, unless the corporation also is doing business so as to be amenable to service and the assertion of jurisdiction in the state. The title of agent has no particular significance, unless it is linked to a bona-fide corporate presence within a district, which is not the case here.

To conclude, the maritime attachment perfected here is also valid and binds the M/V "VASILIA EXPRESS", along with the Rule C *in rem* attachment.

## IV.

### *Measure of Damages for Breach of a Charter Party*

■ When a shipowner incurs in the breach of charter party agreements, as it happens here, the usual or general measure of damages is the difference between the hire reserved in the broken charter and the hire necessary to secure another vessel. *The Ada*, 239 F. 363, 364 (S.D.N.Y.1916) (L.Hand, J.), *reversed on other grounds*, 250 F. 194 (2d

Cir.1918). No claim for lost profits or other expenses is cognizable unless and until the charterer proves that no substitute vessel was available. *Fed. Com. & Navigation Co. v. Overseas Transp. Corp.*, 1973 A.M.C. 2065, 2068 (Arb.1972) (Allen, Arbitrator), *quoting* unreported opinion of L. Hand, J., on damages; *The Themis*, 244 F. 545 (S.D.N.Y.1917) (merits), *modified on other grounds*, 275 F. 254 (2d Cir.), *cert. denied*, 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419 (1921). If the charterer proves that substitute vessels were not readily available, then it may recover damages measured by lost profits. *See Polar SS Corp. v. Inland Overseas SS Corp.*, 136 F.2d 835 (4th Cir.1943). Only the fact of some loss must be proven with certainty. The actual amount of lost profits need not be proved with certainty but may be estimated from the facts of the case, including inferences to be drawn from them and the probabilities they suggest. *See also Gardner v. The Calvert*, 253 F.2d 395, 399–400 (3rd Cir.), *cert. denied*, 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958).

■ The affected charterer has a duty to mitigate damages by exercising reasonable diligence to procure comparable vessels on the best terms available. The injured charterer cannot recover damages which arise by reason of its own inactivity. Only damages attributable to the default of the shipowner are recoverable. *Glidden Co. v. Hellenic Lines, Ltd.*, 315 F.2d 162 (2d Cir.1963).

Here, the court finds that both Navieros Inter–Americanos and Comet Lines exercised due diligence to mitigate, and the calculation of damages and lost profits is the reasonable measure of damages under the circumstances. Defendants failed to produce evidence by cross-examination or directly as part of their case-in-chief that would bring about a perspective of damages other than the one described in the findings of fact. Defendants Vasilia, Inc. and Royal United failed to present any evidence that contradicts the fact that both Navieros Inter–Americanos and Comet Lines attempted to mitigate damages and could not substitute the M/V "VASILIA EXPRESS".

## V.

### The Preferred Mortgage

The Ship Mortgage Act recognizes mortgages on foreign vessels executed under the laws of the foreign country under which the ship is directed and registered at the port of registry of the vessel. 46 U.S.C. § 31301(6)(B). Such mortgages can be enforced through foreclosure and sale in the United States courts. 46 U.S.C. §§ 31325–31326. Jurisdiction in foreclosure of ship mortgages is exclusive of federal courts. *The Thomas Barlum*, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934).

The intervening plaintiff, Gulf Coast Bank and Trust Company, has complied with our requirement that the documentation regarding the mortgage over the M/V "VASILIA EXPRESS" be filed in a fully certified form, countersigned by a consular officer of the United States. This was properly accomplished through Gulf Coast Bank and Trust Company's motion, with enclosures, filed on June 3, 1996. The documents attached to the motion, consisting of a Certification of Records and Authenticity'; Certificate of St. Vincent and The Grenadines Registry, First Preferred Mortgage; and Mortgagor's Affidavit and Bill of Sale, shall be considered as evidence exhibits for Gulf Coast Bank and Trust Company. The bank is entitled to recovery on the ship's preferred mortgage to the limit outlined in the findings of fact.

## VI.

### Miscellaneous Matters and Sale of Vessel

The court finds as a matter of law, that Royal United Shipping, Inc. represented itself to be the owner of the M/V "VASILIA EXPRESS" in the charter party agreements negotiated with Navieros Inter–Americanos S.A., Inc. and Comet Lines Agency, Inc. The evidence confirms the close relationship between Royal United, a Delaware corporation, and Vasilia, Inc., a Liberian corporation, with offices in Greece, which serves no other purpose than that of a convenience flag for the operation of the M/V "VASILIA EXPRESS", under the auspices of Vasilia, Steven, and Michael Psarellis. Under the facts of this case, the court imputes the liability and the responsibility of ownership to both corporations. Both are liable, as owners of the M/V "VASILIA EXPRESS", to the plaintiff and intervening plaintiffs. Estoppel by representation bars Royal United Shipping, Inc. from claiming otherwise. *See Lausell Marxuach v. Díaz de Yañez*, 103 D.P.R. 533, 537–38 (1975). *See also O'Brien & Gere Engineers, Inc. v. Taleghani*, 525 F.Supp. 750, 758–59 (E.D.Pa.1981).

Finally, the defendants have not established any valid legal defense to Transcaribbean Maritime Corp. and Comet Lines Agency, Inc.'s claims for damages in this case. As a matter of fact, the damages found by this court were the object of a stipulation by the parties and have a binding effect upon the defendants.

Pursuant to Rule E(9)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims, and Rule 603.4 of the Rules of this Court, the United States Marshal for the District of Puerto Rico is hereby **ORDERED** to sell the M/V "VASILIA EXPRESS", Official Number 40019, together with its tackle, apparel, engines, furniture, machinery, appurtenances, and equipment, at a public auction to take place at **10:00 A.M., on July 2, 1996.**

Lastly, Messrs. Calvesbert & Brown's renewed motion to withdraw as attorneys of record for Vasilia, Inc. and the M/V "VASILIA EXPRESS", made at the conclusion of trial, is **GRANTED.**

Judgment shall be entered as follows:

1. On behalf of Navieros Inter–Americanos S.A., Inc., in the amount of $182,952.00.

2. On behalf of Comet Lines Agency, Inc., in the amount of $100,312.13.

3. On behalf of Transcaribbean Maritime Corp., in the amount of $24,777.26, plus a per-diem charge of $255 until relieved of its responsibilities towards the vessel.

4. On behalf of Gulf Coast Bank and Trust Company, in the amount of $285,428.91, plus an interest per diem of $90.66 until paid.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 7th day of June, 1996.