**NIKKO SHIPPING CO.**

v.

**M/V SEA WIND, et al.**

**Civil No. Y–96–2727.**

United States District Court,
D. Maryland.

Oct. 22, 1996.

Jo Anne Zawitoski, Baltimore, Maryland; Jason W. Gaarder, Baltimore, Maryland, for Plaintiff.

Geoffrey S. Tobias, Baltimore, Maryland; George H. Falter, Baltimore, Maryland, for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

This action results from an attempt by Nikko Shipping Company, Inc. ("Nikko") to attach or arrest the M/V SEA WIND, which is an ocean-going cargo vessel registered under the laws of Liberia and owned by Kite Maritime, Inc. ("Kite"). The Court permitted the M/V SEA WIND to leave Baltimore after Kite agreed to post security in the event the Court determined that the attachment or arrest was proper.

### I. Facts

Kite and Nikko entered into a charter party involving the M/V SEA WIND on November 15, 1994. The charter of the M/V SEA WIND continued from December 4, 1994 until February 26, 1996. A dispute arose between Kite and Nikko related to the charter party. Nikko claims Kite owes it $179,957.50 and Kite, in turn, claims Nikko owes it $74,575.74. Pursuant to the terms of the charter party, as understood by the par-

ties,[1] Nikko and Kite submitted their dispute to arbitration in London in March 1996.

After an unsuccessful attempt to obtain security from Kite through London counsel in anticipation of a favorable arbitration award, on August 30, 1996, Nikko filed a Verified Complaint for Arrest and Attachment against the M/V SEA WIND *in rem* and Kite *in personam* pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure while the M/V SEA WIND was discharging cargo in the Port of Baltimore and had appointed a local ship's agent. Counsel for Kite filed a General Appearance on behalf of Kite before Nikko could serve any process attaching or arresting the M/V SEA WIND. The Court permitted the M/V SEA WIND to sail from Baltimore after Kite agreed to post security in the event the Court determined the attachment or arrest was proper. The parties have fully briefed the issues and a hearing was held.

### II. *In Personam Attachment* (Rule B)

■ Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure authorizes attachment of the assets of a defendant in admiralty and maritime cases as a means of obtaining jurisdiction over the defendant provided the defendant "shall not be found within" the federal district in which the assets are sought to be attached. Supp.R.Fed. R.Civ.P. B(1). In determining whether Kite is "found within" the District of Maryland, the Court applies a three-part test: "[A] defendant's property ... within a district will be subject to attachment ... *unless* (1) personal jurisdiction can be obtained therein; *and* (2) he can, with due diligence, be served with process therein; *and* (3) at least where the defendant is a foreign corporation, it does sufficient business within the district to otherwise subject it to the jurisdiction of the court." 7A JAMES W. MOORE ET AL., MOORE FEDERAL PRACTICE ¶ B.06, at B–252 (2d ed. 1996), *cited w/ approval in, Rea B Shipping*

---

1. The charter party as drafted calls for New York arbitration, but the parties agree this was a mis-

take as London arbitration was contemplated.

*Corp. v. Uiterwyk Lines,* 1983 A.M.C. 544, 546 (D.Md.1982).

██ By filing a General Appearance, Kite attempted to make itself subject to personal jurisdiction and available for service of process. Kite, however, has not introduced sufficient evidence of "minimum contacts" with the District of Maryland. The only apparent contact between Kite and the District of Maryland is the M/V SEA WIND's lone call at the Port of Baltimore on August 30, 1996, which included the appointment of a local ship's agent. Kite does not suggest any other contacts with Maryland in the past nor does it assert that there will be any future contacts with Maryland. *See Grevas v. M/V Olympic Pegasus,* 557 F.2d 65, 68 (4th Cir. 1977) (holding that a single eight-day call in Norfolk for loading a cargo of soybeans could not establish the requisite contacts to permit the exercise of *in personam* jurisdiction over a foreign corporation), *cert. denied,* 434 U.S. 969, 98 S.Ct. 515, 54 L.Ed.2d 456 (1977); *Morewitz v. S/S Alexandros B.,* 1978 A.M.C. 1509, 1512–13 (E.D.Va.1977) (holding that three visits to Virginia over six and one-half years did not establish sufficiently substantial contacts to authorize exercise of personal jurisdiction over nonresident defendants); *Pappas v. S/S ARISTIDIS,* 1965 A.M.C. 2148, 2150–51 (E.D.Va.1965) (ruling that two visits to Virginia by defendant's vessels over five years were insufficient to serve as predicate for exercise of personal jurisdiction); *Skarpelis v. M/T ARTHUR P.,* 1969 A.M.C. 299, 300–01 (E.D.Va.1969) (holding that "two visits totaling thirty hours over a period of several years" were not sufficient to vest personal jurisdiction over nonresident defendants).

Kite's General Appearance alone, absent significant contacts with the District of Maryland, is not sufficient to conclude that Kite was "found within" the district. *See Construction Exporting Enter., Uneca v. Nikki Maritime Ltd.,* 558 F.Supp. 1372, 1375 (S.D.N.Y.1983) ("The right to the attachment is not defeated by the filing of a general appearance. But for the security of an attachment, because there is no real presence here, the appearance will be of no assistance to plaintiff in enforcing its rights, and is not

equivalent to being found within the district."), *appeal dismissed,* 742 F.2d 1432 (2d Cir.1983); *Navieros Inter–Americanos, S.A. v. M/V Vasilia Express,* 930 F.Supp. 699, 708 (D.P.R.1996) ("Service of process will not be effective to establish jurisdiction, unless the corporation also is doing business so as to be amendable to service and the assertion of jurisdiction in the state. The title of agent has no particular significance, unless it is linked to a bona-fide corporate presence within a district, which is not the case here."); *Iran Express Lines v. Sumatrop, A.G.,* 563 F.2d 648, 652 (4th Cir.1977) (Hall, J. concurring) (stating that "carefully arranged timing and connivance [should not be allowed] to skirt equity and to defeat the attachment."). Accordingly, Nikko was entitled to attach the M/V SEA WIND pursuant to Rule B, and Kite will be ordered to post security.

### III. *In Rem Arrest* (Rule C)

██ Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure authorizes *in rem* actions to arrest vessels to enforce maritime liens. Supp.R.Fed.R.Civ. Pro. C(1). In resolving whether Nikko's attempt to attach the M/V SEA WIND was proper, the Court must determine whether the charter party between Nikko and Kite is governed by American or English law. The charter party between Nikko and Kite does not contain a choice of law provision. It does, however, contain an arbitration provision that, as interpreted by parties, requires London arbitration. Kite argues that the selection of London arbitration is a clear manifestation of the parties' intent to have disputes decided under English law. Nikko counters that the parties did not agree on a choice of law and American law should apply because Nikko is a U.S. corporation and the charter party was executed in the U.S., requires payment in U.S. dollars to a U.S. bank, and invokes the U.S. Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.* The Court finds the charter party is governed by American law.

██ Under American law, it is firmly established that the breach of a charter party that is not merely executory creates a mari-

time lien. *See, e.g., Rainbow Line, Inc. v. M/V Tequila,* 480 F.2d 1024, 1027 (2d Cir. 1973) ("The American law is clear that there is a maritime lien for the breach of a charter party [provided that it is not merely executory]."); *International Marine Towing v. Southern Leasing Partners,* 722 F.2d 126, 130 (5th Cir.1983) (same), *cert. denied sub nom., First Miss. Nat'l Bank v. International Marine Towing,* 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984). The charter party between Nikko and Kite is clearly not executory, and, thus, its breach creates an enforceable maritime lien under applicable American law. Accordingly, Nikko was entitled to arrest the M/V SEA WIND under Rule C, and Kite will be ordered to post security.

Based upon the foregoing analysis, Nikko was entitled to attach and arrest the M/V SEA WIND pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and Kite will be ordered to post security in the amount of $250,000.

## ORDER

In accordance with the attached Memorandum, it is this 22nd day of October, 1996, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Verified Complaint seeking to attach and arrest the M/V SEA WIND BE, and the same IS, hereby GRANTED; and

2. That Defendant, Kite Maritime, Inc., POST security in the amount of two hundred fifty thousand dollars ($250,000) on or before the 29th day of October, 1996, subject to further proceedings in this Court; and

3. That a copy of this Memorandum and Order be mailed to counsel for the parties.